**NICOLE JOSEPH**
Telephone: 909-257-1575
Email: n.joseph2022@yahoo.com
In Pro Per for Plaintiff NICOLE JOSEPH



**F I L E D**
CLERK, U.S. DISTRICT COURT

03/23/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

**IFP Submitted**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

**8:23-cv-00537-CJC-(DFMx)**

NICOLE JOSEPH, an individual,

      Plaintiff,

  vs.

REBECCA CHMURA, an individual; COLLINS COLLINS MUIR + STEWART LLP, COLLINS + COLLINS LLP, ZURICH NORTH AMERICA INSURANCE CO., STEADFAST INSURANCE COMPANY, NAVIGATORS INSURANCE COMPANY, and DOES 1-20.

      Defendants.

Case No.

Plaintiffs Complaint For:

1. **NEGLIGENCE**
2. **NEGLIGENT MISREPRESENTATION; AND OR**
3. **MISREPRESENTATION**
4. **FAILURE TO ACT IN GOOD FAITH & UNFAIR PRACTICES**
5. **PUBLIC DISCLOSURE OF PRIVATE FACTS**
6. **DEFAMATION & DEFAMATION PER SE**
7. **HARASSMENT & RETALIATION**
8. **INTERFERENCE; AND OR**
9. **INTERFERENCE WITH CIVIL RIGHTS**
10. **NEGLIGENT HIRE, SUPERVISION & RETENTION**
11. **VICARIOUS LIABILITY**
12. **EMOTIONAL DISTRESS**

Plaintiff, Nicole Joseph complains and alleges as follows:

## PARTIES

- Plaintiff, Nicole Joseph (referred to herein as "Plaintiff" and or "Nicole") is an individual who is, and at other times relevant hereto is/was, a resident and business owner of South Carolina.

- Defendant Rebecca Chmura (referred to herein as "Defendant" and or "Ms. Chmura") is an individual who is, and at all relevant times was, a resident and employed in, Orange County, California.

- Defendants, Zurich North America ("Zurich") is, and at all relevant times was, a corporation organized under the laws of New York, having its principal place of business in the state of Illinois, and at all pertinent times is/was licensed to do business and doing business in California, with the relevant policies in whole being, Orange County, California policies.

- Defendants, Steadfast Insurance Company ("Steadfast") is, and at all relevant times was, a corporation having its principal place of business located at 1299 Zurich Way, Schaumburg, Illinois, 60196, and at all pertinent times is/was licensed to do business and doing business in California, with the relevant policies in whole being, Orange County, California policies.

- Defendants, Navigators Insurance Company ("Navigators") is,  and at all relevant times was, a New York company with its principal place of business located at One Penn Plaza 32nd Floor, New York, NY 10119, and at all pertinent times is/was licensed to do business and doing business in California, with the relevant policies in whole being, Orange County, California policies.

- Defendants, Collins Collins Muir + Stewart LLP and or Collins + Collins LLP is, and at all relevant times was, a California corporation licensed to do business and doing business in, Orange County, California, that at all pertinent times employed Rebecca Chmura.

- Plaintiff is presently unaware of all of the facts and unaware of the true names and or capacities whether individual, corporate, associate, or otherwise of the Defendants sued herein under the fictitious names Does 1-20, but prays for leave to amend and serve such fictitiously named Defendants pursuant to California Code of Civil Procedure §474, once all of the facts have been ascertained and their names and capacities become known.

- Plaintiff is informed and believes, and thereon alleges, that each of the said Defendants, including those fictitiously named Does Defendants, is responsible in some manner or form for the acts, errors, omissions, practices,

policies, transactions, and or occurrences alleged herein this Complaint.

- Plaintiff may seek to amend this Complaint to allege the true names, capacities, and responsibility of these Doe Defendants once they are ascertained, and to add additional facts and or legal theories. Plaintiff makes all allegations contained in this Complaint against all Defendants, including Does 1-20.

**JURISDICTION AND VENUE**

- This Court has jurisdiction over the subject matter of this action pursuant to 28 USC §1332 (a) (1) and (e) because Plaintiff is a resident of South Carolina, all of the Defendants, including those fictitiously named Does Defendants, are all residents of and or licensed to conduct business and doing business in the state of California, none of the Defendants, including those fictitiously named Does Defendants are residents of and or have their principal place of business in South Carolina, and because the District Courts have original jurisdiction of all civil actions, in law and equity, arising under the Constitution, laws and or treaties of the Untied States pursuant to 28 USC §1331, and the matter in controversy exceeds $75,000.00, exclusive of costs.

- Venue is proper in this district because Defendants, are residents of and or licensed to conduct business and or regularly conduct business in, Orange County. Most of the acts, errors, omissions, practices, policies, transactions, and or occurrences alleged and sued upon herein arose in, Orange County, California. Most of the related contracts, agreements, retainers, policies, and or construction of accounts, trusts, and or estates were established, created, administered, and or managed in, Orange County. The underlying trust and estates were created under the laws of, Orange County, California. A substantial amount of the property, real property, and assets at issue are/ were located in, Orange County. A majority of the parties and witnesses reside and or work in, Orange County. Both of the underlying actions were previously adjudicated in, Orange County Courts. And one of the underlying actions was adjudicated and resolved in this United States Court for the Central District of California – Southern Division,  whereby the parties to that action, stipulated the retention of this Court, SACV 18-0175 AG (DFMx).

**GENERAL BACKGROUND**

- This Complaint relates back to and or arises from, among other things, several underlying legal disputes as described below.

- In 2005, Plaintiff's mother (referred to herein as "Mary"), established and funded the Joseph Trust dated April 11, 2005, ("Trust"). Mary was the settlor and initial trustee of the Trust and she assigned and transferred to it

substantially all of her assets including, without limitation, real property, and business interests. That same day, Mary also executed a pour-over will that would have bequeathed and devised the residue of the estate to the Trust.

- Plaintiff, and her two brothers, were appointed successor 1/3 equal co-trustees, 1/3 equal co-executors, 1/3 equal co-agents, and 1/3 equal share beneficiaries of the Trust and Estate. According to its terms, and upon Mary's death, the Trust property was to be equally divided into three equal shares among Plaintiff and her two siblings, Exhibit A.

- In May 2015, Mary was diagnosed with terminal lung cancer. Thereafter, Plaintiff traveled regularly to California from the Carolina's where she resided and owned several businesses at the time to assist her mother and help manage her healthcare and personal affairs.

- In September 2015,  a former employee and close family friend sued Plaintiff for allegedly wrongfully terminating her ("The South Carolina Lawsuit").

- Consistent with her beliefs that the South Carolina Lawsuit was, and indeed later admittedly proven to be frivolous, Plaintiff filed a counterclaim for misrepresentation and fraud. That suit settled in January of 2018 with a $15,000 dollar settlement award for money borrowed and an admission by the Plaintiff that the action was groundless, Exhibit B.

- Nevertheless, in or around July 2016, at the recommendation of her attorney in the South Carolina Lawsuit, Nicole and Mary sought legal advice and services from a new attorney ("estate attorney") licensed to practice law in California to seek advice as to whether the South Carolina Lawsuit could potentially affect Plaintiffs Trust assets. In particular, Nicole sought advice and expressed her concern that the Plaintiff in the South Carolina Lawsuit was wrongfully targeting Plaintiff's assets.

- During that same meeting in July 2016, after consulting with Nicole the estate attorney advised that in order to protect her share of the trust property and assets she should be removed as a co-trustee in accordance with the Joseph Trust's pre-existing Spend-Thrift Provision which explicitly states that: "No interest in the principal or income of any trust created under this declaration of trust shall be anticipated, assigned, encumbered or subject to creditors' claims or legal process before actual receipt by the beneficiary. THIS PROVISION SHALL NOT APPLY TO A TRUSTOR'S INTEREST IN THE TRUST ESTATE," Exhibit A — Article 5, Section 5.4.

- By the fall of 2016 Mary's health had steadily declined. And on October 31, 2016,  the estate attorney allegedly prepared the First Amendment to the April 11, 2005, Joseph Trust ("First Amendment") that removed Nicole as co-

trustee, but also had the ill effect of **omitting** her from **one** of many different beneficiary clauses, contrary to California Probate law. At no point did the estate attorney ever inform Nicole and or Mary that the First Amendment had the effect of disinheriting Plaintiff as a beneficiary of the Trust and or Estate.

- Plaintiff continued to stay with and care for her mother until after her death. At all times thereto, Plaintiff and Mary believed that Plaintiff was a one-third beneficiary of Mary's Trust Estate and had no reason to believe otherwise.

- For instance, consistent with the fact that Nicole was a beneficiary, after Mary's passing on, January 31, 2017, the estate attorney continued to represent and advise Nicole and both of her brothers with respect to the Trust administration and property. During that time after Mary's passing Nicole sought, and the estate attorney provided, among other things, legal advice in connection with the Joseph Trust, property taxes and real property of the trust, as he represented to Plaintiff that he was also a licensed California real estate broker. Throughout so doing, Defendant failed to mention and or concealed, that the First Amendment **omitted** Plaintiff as a beneficiary of Mary's Trust Estate, Exhibit C.

- By early April 2017, Plaintiff had not seen the Trust Amendment and was not aware that the Trust Amendment purported to remove her as both a co-trustee and a beneficiary of the Joseph Trust Estate. However, by that time, Plaintiff was concerned about her brother's management of the trust property and assets.

- As a result, Plaintiff threatened to seek legal recourse against her brothers unless the parties formally agreed in writing to handle any dealings of the Trust estate fairly and in the manner contemplated by their mother, that all three parties act together regarding the management of the Trust and its property and assets.

- On or around April 18, 2017, and April 19, 2017, the parties executed an Agreement (referred to herein as "Agreement"). The Agreement acknowledged that Plaintiff was removed as a Co-Trustee from the Joseph Trust at the advice of the estate attorney. The Agreement further provided that at no time shall any party sell or transfer "any property without proper notification and consent from all parties. . ." Furthermore, none of the parties may make changes to any loan or mortgage agreements without all parties' notification and consent.

- The estate attorney was admittedly aware of this agreement and did not oppose, dispute, and or advise any of his three clients adversely to the agreement.

- In June of 2017, nearly six months after Mary's passing, Nicole sent the estate attorney a notice for termination of his services to which he obliged, Exhibit D.
- At this point, Plaintiffs still had yet to see a copy of the trust documents and still believed that she was a 1/3 equal share beneficiary of the trust estate.
- In October 2017, months following her requests, including after formal requests from another attorney on, July 10, 2017 and July 12, 2017, and nearly a year after her mother's passing, Plaintiff, admittedly according to the estate attorney's court pleadings, for the first time received a copy of the Notice of Trustee and a copy of the amended Trust instrument pursuant to California Probate Code Sections 16060-16064 from her brother's new attorney, Mr. Pierson, Exhibit C & E.
- When Plaintiff reviewed those documents, she discovered for the first time that the First Amendment allegedly purported to omit her as a Trust estate beneficiary. Highly confused about the things that were happening and in a convoluted panic, Plaintiff immediately filed and or attempted to file actions in pro per raising questions about, among other things, the trust document's validity and certain potential inconsistencies, Exhibit F.
- On or around September 25, 2018, Plaintiff filed a malpractice lawsuit against her former estate attorney and Does 1-10, pre-discovery of all the facts, for breach of duty and professional negligence for which Ms. Rebecca Chmura ("Ms. Chmura") was hired and retained as defense counsel, Exhibit G.
- Plaintiff also filed a parallel federal action ("Federal Action") against her brothers here in this same District Court that resolved on or around, December 12, 2019, Exhibit G - SACV 18-0175 AG (DFMx).

**REPRESENTATION BEGINS**

- In or around, September 2018, Rebecca Chmura began representing former Defendant, ("estate attorney.")
- At the beginning of that case, at the Court's directive, the parties met and conferred regarding staying the malpractice case in light of the federal action, which would have resolved common factual matters and determined damages.
- In no uncertain terms, Ms. Chmura represented that she would agree to stay after conducting "limited" discovery.
- That was one of many false statements that followed. Over the next two months, Ms. Chmura and her client unleashed an onslaught of unrelated discovery demands including the insistence of untimely third-party depositions of Plaintiff brother's and later impliedly admitted it had no

intention of honoring the Courts request or the agreement.

- Plaintiff and her counsel detrimentally relied on those misrepresentations, by among other things, not conducting their own initial discovery that would have been needed to oppose a motion for summary judgment.

- As a result of Ms. Chmura's unreasonable conduct and her refusal to postpone the March 12, 2019, depositions of third-party witnesses Plaintiff's counsel was left with no choice but to file a motion to quash and order for protection in light of Defendants instance that depositions would go forward "no matter what" in disregard of the Court's twice order that the parties meet and confer regarding a stay of action, Exhibit H - Highlighted.

- At all times relevant, and evidenced at least as early as February 14, 2019, Rebecca Chmura was aware of the fact there was a parallel federal action pending covering the same overlapping facts and matters and that, Plaintiffs brothers were represented by counsel, Exhibit I.

- In spite of the above and in disregard of Plaintiff's Motion and the pending Court Order for a Stay of proceedings Rebecca Chmura met with Plaintiffs brothers on March 12, 2019, absent their counsels notice and or consent and obtained, and further concealed from all parties, including the brother's counsel, for more than a year, what Plaintiffs brother alleged during their subsequent June 16, 2020 sworn depositions, to be falsified statements, Exhibits J, K & L - Highlighted.

- In or around, May of 2019, the state Court issued its Stay of action pending the resolution of the parallel federal action citing overlapping issues and damages.

- On or around, December 12, 2019, the federal action was resolved, by among other things, with a reformulation of the original Joseph Trust dated April 11, 2005, and re-assignment of Nicole's rights and interests including but not limited to, Special Representative, whereby the state Court then lifted the stay of its proceedings.

- At all times relevant thereto, Rebecca Chmura admittedly was aware of and had reviewed the December 12, 2019, reformulation and terms affirming Plaintiffs right to sue, but nonetheless continued to conduct baseless defenses, and assert frivolous positions regarding Plaintiffs rights, interests and statutes of limitations that were without probable cause for the purpose of, among other things, misleading the Court and others.

- After Plaintiff's brother's June 16, 2020, depositions had been taken and when Plaintiff/Plaintiff's counsel ousted Ms. Chmura in connection with her less-than-good faith conduct for a second time, this time for meeting with Plaintiffs

brother's while the federal action was still ongoing and active in violation of California Professional Rules of Conduct rule 4.2 and obtaining what Plaintiffs brother alleged to be falsified statements from them at that time, Defendant's behavior escalated from bad to worse, Exhibit J & K.

- In an attempt to conceal their misconduct and in an outraged retaliation of Plaintiff and her counsels oppositions and criticism of Defendants misconduct Ms. Chmura and her client engaged in a cover up of misrepresentations, concealment of material facts, and harassment that, among other things, hampered and delayed Plaintiff's attorneys and obstructed Plaintiffs rights to retain counsel of choice by, among other things, making baseless threats to pursue disciplinary action against counsel unless the lawsuit was dismissed, making threats to pursue criminal action against Plaintiff unless the lawsuit was dismissed, making threats to publish private and privileged undisclosed information that would injure harm and humiliate Plaintiff and her family unless the lawsuit was dismissed, manifesting extreme fear and subjecting Plaintiff to bias and prejudice by the use of discriminatory and belittling words or conduct both in private emails and documents filed with the court, stating or implying an ability to influence improperly a government agency or official to achieve results, violating Plaintiffs First Amendment constitutional right to petition the Court for redress of grievances by (a) intimidating Plaintiff into silence (b) chilling her freedom of speech by harassing her into believing that criminal charges would be brought against her, interfering with and or depriving Plaintiff of her fundamental rights and liberties to due process and fair administration of the law, among others.

- In particular, Ms. Chmura sent threatening letters directly to Plaintiff coupled with a demand to dismiss and or demands for various amounts of money disguised as legal fees that stated impart, "testifying under oath is a crime in California that carries a potential sentence of prison for up to four years, " "You clearly are not familiar with Civil Code 47 and the related case law. If you don't want the details of your private life, and that of your brothers, father, and mother, to be 'splashed' across the public record, then dismiss your lawsuit. It's that simple."

- First, the law does not contemplate the use of criminal process as a means of collecting or forbearing a debt." (Flatley v. Mauro 2006), 39 Cal. 4th 299, 303.  Second, 42 USC §1985 (2) OBSTRUCTING JUSTICE; INTIMIDATING PARTY, WITNESS, OR JUROR makes it unlawful for two or more persons in any State or Territory to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from

testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified.

- On September 22, 2020, in the middle of litigation, Plaintiff filed a complaint for misconduct and obstruction of justice with the California State Bar which she also filed with the Court that same day, Exhibit M.

- On September 23, 2020, the Court, on record, ordered all eight of Defendants pending motions that she had filed in less than three months off calendar and strictly prohibited, Rebecca Chmura from filing any additional motions until after summary judgement on February 16, 2021.

- On November 23, 2020, after **years** of continuous harassment, lies, threats and the infliction of severe duress and emotional distress Defendants made a settlement offer, however, most tellingly conditioned it upon Plaintiffs agreement to withdraw her complaint with the California State Bar. (Bus. & Prof. Code § 6090.5; *In re Matter of McCarthy* (Review Dept. 2002) 4 Cal. State Bar Ct. Rptr. 364, 381-382 & fn. 19.) The court may admit evidence of compromise offers and or negotiations for purposes, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

- On November 25, 2020, infuriated by Plaintiffs refusal to engage and or agree to dismiss the pending action with the California State Bar, Rebecca Chmura filed yet another Motion in disregard of the Courts previous order strictly prohibiting the filing of any additional motions, seeking monetary sanctions against Plaintiff pursuant to Civil Procedure 128.7 in the amount of $300,683.52.

- Tellingly, and supportive of Defendants motives, the Court distinctly "denied" that Motion citing that, "The Motion seeks a monetary sanction in the amount of $300,683.52. (Code Civ. Proc., § 128.7, subdivision (d).) The Motion states, "Per the arguments set out in Defendants' MSJ and Motion for Terminating Sanctions, and per California Code of Civil Procedure section 128.7(b)(1)-(3), this suit against Defendants must be dismissed with prejudice and sanctions should be imposed against Plaintiff, personally, as her Complaint lacks merit or evidentiary support and it was brought for an improper purpose to harass Defendants, unduly delay the prosecution of this litigation, and to force Defendants incur unnecessary fees and costs to defend against this suit." (Motion; 3:15-20.)" "Defendants states, Plaintiff's ". . . Complaint is harassing, highly offensive, and completely devoid of legal or evidentiary merit." (Motion; 4:28-5:1.) Defendants have not submitted any

evidence in support of their contention that the Complaint is harassing,
offensive and devoid of legal and evidentiary merit."

- By consistently and relentlessly painting Plaintiff as the liar, as dishonest, and
criminal no less, and by relentlessly asking everyone who would listen to
believe their reckless campaign of defamatory harassment Defendants placed
Plaintiff in a highly offensive false light; instead of the victim of their actions
Defendants intended to paint Plaintiff as the perpetrator of fraudulent
allegations. Which in turn placed Plaintiff in a state of absolute fear and
duress and forced her to file documents with the Court that she would have
never otherwise filed in effort to defend herself against Defendants false
accusations and threats. And there should be no mistake about how
humiliating that was for Plaintiff and the undue ridicule, among other things,
that she was subjected to as a result.

- Plaintiff is clearly not an attorney, has never been educated in the law or
otherwise, and never should have been placed in such compromised positions
and her rights so severely violated and obstructed to the point where she was
required to have to do so against her own free will.

- Plaintiff is informed and believes and based thereon alleges that Defendants
knew of or acted in reckless disregard as to the falsity of their statements and
as to the false light in which Plaintiff was placed.

- Defendants, Rebecca Chmura's employers and or retainers, were negligent by
failing to implement measures to protect Plaintiff from foreseeable risks,
unreasonable risks of harm, and or the reoccurrence of the same of which
they had prior certified notice; and failed to terminate and or competently
replace Rebecca Chmura and or take any disciplinary action against her, but
instead, continued to retain her and allowed her to continue victimizing and
abusing Plaintiff. Their failure to properly train, supervise, and or terminate
Rebecca Chmura was the direct and or proximate cause of Plaintiff's injuries
and harm and Plaintiffs emotional distress.

- An employer is vicariously liable for the negligent and wrongful acts of his
agents, representatives, employees and any others committed within the
scope of their employment. ("a principal is responsible to third persons for the
negligence of his agent in the transaction of the business of the agency,
including wrongful acts committed by such agent in and as a part of the
transaction of such business, and for his willful omission to fulfill the
obligations of the principal.") See also Carr v. Wm. C. Crowell Co. (1946) 28
Cal. 2d 652,654 ("It is settled that an employer is liable for willful and
malicious torts of his employee committed in the scope of the employment.").

- As a direct and or proximate cause of Defendants malfeasance and negligence Plaintiff suffered losses and damages including but not limited to, loss of property, rights, interests and severe emotional distress and mental anguish.

- For Defendants negligence and unfair practices Plaintiff seeks damages according to proof in excess of the jurisdictional minimum of this Court.

### FIRST CAUSE OF ACTION
### NEGLIGENCE

- Plaintiff incorporates by reference and re-alleges as if fully restated herein verbatim the material allegations contained above.

- At all times relevant to Plaintiff's claims, Plaintiff had a direct and or proximate relationship and or dealings with Defendants which gives rise to a duty of care that required that such services and or dealings be performed in a competent and reasonable manner and where they knew and or should have known that if they or their agents, principles, representatives, officers, policy-makers, partners, managers, supervisors, employees, firms, agencies, companies, and any or all other's conduct, actions, practices, policies and or transactions fell below the ordinary standard of reasonable care Plaintiffs would be foreseeably harmed.

- Defendants failed to act as any other reasonably careful person, business and or agency would under the same or similar circumstances and as a direct and or proximate result Plaintiff incurred damages and losses according to proof in excess of the jurisdictional minimum of this Court.

- For Defendants negligence, Plaintiff seeks compensatory and consequential damages in amounts more specifically to be proven at trial.

### SECOND & THIRD CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION AND OR MISREPRESENTATION

- Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations contained above.

- 'The elements of a negligent misrepresentation are "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.' [Citation.] Negligent misrepresentation does not require knowledge of falsity . . . .' [Citations.]" Misrepresentation requires that Defendant knew the representation was false or was reckless about its truth.

- This Complaint alleges that Defendants negligently and or recklessly made false statements and or misrepresentations that were, among other things, obstructive and oppressive without reasonable grounds for believing they

were true and induced Plaintiff and or other's reliance on the fact
misrepresented in disregard for Plaintiff's rights, interests and safety.

- As a direct and or proximate result of Defendant's misrepresentations Plaintiff
  suffered losses and damages, undue hardship, stress, trauma, and severe
  emotional distress for which she seeks compensatory, consequential and
  punitive damages in amounts to be proven at trial.

## FOURTH CAUSE OF ACTION
## FAILURE TO ACT IN GOOD FAITH & UNFAIR PRACTICES

- Plaintiff incorporates by reference and re-alleges as if fully stated herein the
  material allegations contained above.
- Plaintiff alleges that Defendants, and all of them, acted as the agent for the
  other, with legal authority to act on the other's behalf and failed to act in
  good faith, subjected Plaintiff to unfair practices, failed to promptly and fairly
  investigate Plaintiff's claims, unreasonably delayed, converted, and or
  refused to timely negotiate and or pay Plaintiff's claims.
- As a direct and proximate cause of Defendant's conduct Plaintiff suffered,
  losses and damages, undue hardship, stress, trauma, and severe emotional
  distress for which Plaintiff seeks compensatory, consequential and punitive
  damages including reasonable attorney's fees in amounts to be proven at
  trial.

## FIFTH CAUSE OF ACTION
## PUBLIC DISCLOSURE OF PRIVATE FACTS

- Plaintiff incorporates by reference and re-alleges as if fully stated herein the
  material allegations contained above.
- Courts have routinely recognized that certain details about people and or
  their business are "off limits" and or privileged from public disclosure.
- Defendants threatened to publish and published information and facts that
  were: sufficiently intimate, private, personal, and *privileged* for which
  Defendants should have known they owed Plaintiff a reasonable amount of
  care to protect from the public, highly offensive and damaging to Plaintiff
  and her business, and violated California Professional Rules of Conduct 1.6
  and 1.9 and California Business and Professions code §6068.
- As a direct and or proximate result of Defendants public disclosure of private
  facts Plaintiff and her business suffered undue backlash, and damages for
  which Plaintiff seeks general and special damages in amounts to be proven
  at trial.

## SIXTH CAUSE OF ACTION
## DEFAMATION & DEFAMATION PER SE

- Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations contained above.
- Plaintiff claims that Defendants harmed them by among other things making damaging, injurious, and offensive accusations and statements regarding Plaintiff that weren't true.
- The individuals and public who received and heard the false statements and publications understood said false statements and publications to be about Plaintiff, and to mean, among other things, that Plaintiff acted in a way incompatible with her person and or business profession.
- Defendants made such statements with a complete disregard for the truth and Plaintiff's rights and interests, in that such statements were false and that they subjected Plaintiff to undue contempt and humiliation thereby causing Plaintiff grievance harm and injury and justify the awarding of general, special and punitive damages in amounts to proven at trial.

**SEVENTH CAUSE OF ACTION**

**HARASSMENT, DISCRIMINATION, & RETALIATION**

- Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations contained above.
- Plaintiff is an individual that was involved in several underlying lawsuits and or disputes.
- During litigation, and relatedly outside of the actual litigation itself, Plaintiff was subjected to, among other things, discriminatory conduct, threats, intimidation, harassment, and retaliation for pursuing her lawsuits and or complaints and for opposing and or reporting Defendants misconduct.
- As a direct and or proximate cause of Defendant's unconscionable practices and conduct Plaintiff suffered damages that justify the awarding of exemplary and punitive damages in amounts according to proof at trial.

**EIGHTH CAUSE OF ACTION**

**NEGLIGENT INTERFERENCE**

- Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations contained above.
- At all times relevant, Defendants were aware of, among other things, the numerous contracts, agreements, settlements, assignments, disbursements, and or distributions Plaintiff stood to receive and or enter, including but not limited to those related to Plaintiff's business, her mother Mary M. Joseph and or the Joseph Trust and estate.
- Defendants engaged in conduct, made statements, took action, failed to take action, and or concealed facts that contributed to, interfered with, and or

aided and abetted with the interference of Plaintiff's rights, interests, and relationships and were certain to cause disruption and discourse sufficient to substantially interfere with Plaintiff's rights, interests, and relationships.

• As a direct and or proximate result of Defendant's actions and or disruptions there was an actual breach and or actual interference that was the cause for Plaintiff's losses and damages for which Plaintiff seeks recovery of actual and special damages in amounts more specifically to be proven at trial.

## NINTH CAUSE OF ACTION
## INTERFERENCE WITH CIVIL RIGHTS

• Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations contained above.

• Plaintiff alleges that Defendants directly and or proximately violated, interfered with, and or deprived Plaintiff of certain fundamental rights and liberties thereby causing Plaintiff substantial harm and injury for which she seeks actual damages, punitive damages, and attorney's fees for an amount to be proven at trial.

## TENTH CAUSE OF ACTION
## NEGLIGENT HIRE,  SUPERVISION,  & RETENTION

• Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations contained above.

• Plaintiff alleges that Defendants hired, supervised, retained, and or were directly and or indirectly involved in the direction, leadership, practices, policies, and day-to-day operations of their agents, representatives, principles, practitioners, employees, and or any others that after being sufficiently noticed of their conduct and unfitness to perform their obligations, failed to take immediate action, justifiable action, and or any action to prevent Plaintiff from incurring injury and or harm thereby creating additional unreasonable injury and harm.

• As a direct and or proximate result of Defendant's actions, and or lack thereof, Plaintiff suffered losses and damages for which she seeks actual and consequential damages in amounts more specifically to be proven at trial.

## ELEVENTH CAUSE OF ACTION
## VICARIOUS LIABILITY

• Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations contained above.

• Plaintiff alleges that Defendants had control over,  should have had control over, and or are vicariously responsible and liable for the negligent and or reckless conduct, actions, practices, policies, omissions, and or transactions

of other Defendants.

- Defendants where negligent in carrying out their responsibility and exercising their duty to have control over their agents, representatives, principles, practitioners, employees and or any others and monumentally failed to use their supervisory obligation to prevent and or limit any of the harmful acts performed.

- As a direct and or proximate result thereof Plaintiff suffered losses and damages for which she seeks actual and consequential damages in amounts more specifically to be proven at trial.

### TWELFTH  CAUSE OF ACTION
### EMOTIONAL DISTRESS

- **Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations contained above.**

- **Plaintiff alleges that Defendants negligently and or with a reckless disregard for its effect inflicted severe and prolonged emotional distress and or were certain or substantially certain, that such distress and anguish would result from their actions and conducts.**

- **Defendant's actions and conducts were so extreme and outrageous so as to exceed all possible bounds of decency and are sure to be regarded as atrocious and utterly intolerable in a civilized community.**

- **Defendants acts and conduct were the cause of Plaintiff's duress, emotional harm, mental anguish, severe stress, and suffering and the emotional distress and mental anguish suffered by Plaintiff was so severe and traumatizing that no reasonable person should ever be expected to endure it.**

- **As a direct and proximate result of Defendant's negligence and conduct Plaintiff suffers, without limitation, emotional pain and suffering, mental anguish, trauma, fright, worry, shock, grief, humiliation, shame, loss of sleep, loss of business and or income, loss of valuable time and opportunity, loss of property and sentimental property, undue lifestyle changes, and the inability to move on and heal from the tragic passing of her mother and the events that transpired surrounding her death from still having to relive these matters on a daily basis years later for which Plaintiff seeks compensatory, consequential and punitive damages in amounts more specifically to be evidenced and proven at trial.**

### LEAVE TO AMEND

- Plaintiff is not an attorney and by no means attempts to undermine the legal proficiency and or authority of this Court and or having a qualified attorney represent her.  She filed this action *in pro per* — for the same reason she necessitated having to do so at times in the past and because she is presently unaware of all of the facts and unaware of the true names and or capacities of the Does Defendants named in this Complaint. Whereby Plaintiff will respectfully seek to have counsel amend this complaint.

- As set forth above, there can be no question that a real and actual legal dispute exists and that Plaintiff has suffered actual losses and damages that she is entitled to recover. Nonetheless, if this honorable Court believes that any of the claims, relief, and or other matters are inconsistent with Federal Court jurisdiction, Plaintiff respectfully requests forgiveness and prays that she be given leave to amend her Complaint to address those issues.

### PRAYER FOR RELIEF

- WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

- For compensatory and consequential damages according to proof, within the general jurisdiction of the Court;

- For general, special, and incidental damages against Defendants in an amount to be proven at trial;

- For punitive and exemplary damages;

- For restitution of monies paid;

- For the cost of this suit incurred herein, and or any other applicable suit, including reasonable attorneys' and experts' fees; and

- For such other and further judgment and or relief as the Court may deem just and proper.


DATED: March 22, 2023                    By:   NICOLE JOSEPH

EXHIBIT "A"

# INTRODUCTION

# THE JOSEPH TRUST
## Dated April 11, 2005

# QUIT CLAIM DEED

# ADVANCE HEALTH CARE DIRECTIVE

# LETTERS TO ORGANIZATIONS

# ESTATE ORGANIZER

# ORIGINALS

# DECLARATION OF TRUST

This Declaration of Trust is made by the undersigned as of the date set forth in Article 1.

## ARTICLE 1

## NAMES, APPOINTMENTS and PROPERTY OF TRUST

1.1    NAME: This Trust shall be known as:

"The JOSEPH TRUST dated April 11, 2005."

1.2    TRUSTOR/SETTLOR:

MARY M. JOSEPH shall be the Trustor of this trust.

1.3    TRUSTEE(S): Trustor appoint the following as Trustee(s) of this trust:

First Appointment:  MARY M. JOSEPH, as Trustee.

Second Appointment:  NICOLE JOSEPH, MICHAEL JOSEPH and ANTHONY JOSEPH, my children as Co- Trustees.

Third Appointment:  No others.

MARY M. JOSEPH shall serve as the first appointed trustee. If MARY M. JOSEPH fails to qualify or ceases to act, then the next successor appointee's shall serve in the order appointed.  Except as otherwise provided in Article 4, where Trustor has appointed co-trustees, all co-trustees shall act together. Upon the failure of one of the co-trustees to qualify, or upon his or her cessation of acting, the remaining joint appointee(s) shall serve as trustee or trustees.

1.4    BENEFICIARIES: Trustor shall be the initial beneficiary of this trust. Successor beneficiaries are those persons designated in Article 2.

1.5   CHILDREN:  Trustor has three children whose names and birthdays are:



| NICOLE JOSEPH | June 27, 1978 |
| MICHAEL JOSEPH | March 4, 1986 |
| ANTHONY JOSEPH | March 4, 1986 |

1.6   CREATION OF TRUST AND ASSIGNMENT OF ASSETS:  MARY M. JOSEPH, Trustor, hereby transfers, assigns and delivers to The JOSEPH TRUST dated April 11, 2005, the following assets:

　　1.6.1   All jewelry, china, silverware, crystal, clothing, collectables, antiques, household furniture and furnishings, personal automobiles, motor homes, mobile homes, boats and other tangible articles of a personal nature, together with any insurance on such property, as well as insurance on any other assets owned by the trust;

　　1.6.2   Promissory notes, bearer bonds, stocks or mutual funds, checking and saving accounts, contents of safe deposit boxes, claims under pending lawsuits, and other causes of action;

　　1.6.3   Any other assets, income property, businesses including limited partnerships, held by Trustor which otherwise would be subject to probate.

　　1.6.4   All real properties and or income thereof held by Trustor shown in Attachment A, as may be exchanged or purchased from time to time.

　　1.6.5   Certain personal effects of Trustor have special meaning. Pursuant to the living trust, the trustees are to distribute those items identified in Attachment B to those indicated. If the personal property does not exist at the time of Trustor's death then the gift shall lapse.

These assets, together with any other property which may become subject of this declaration of trust, including assets which require formal documents of transfer, shall constitute the trust estate of this trust and shall be held, administered and distributed by the trustee as provided in this declaration of trust. Trustor requests that any person dealing with the trustee recognize this assignment without any further documentation.

1.7   CLASSIFICATION OF PROPERTY:  The separate property assets of the Trustor placed in the trust are and shall remain; together with the income there from remains the separate property of the respective Trustor who placed it in the trust.

Trustor is widowed.  There are no outstanding Community Property assets to be received or distributed from Trustor's previous marriage.

# ARTICLE 2

## DISTRIBUTION OF INCOME AND PRINCIPAL

2.1   THE NET INCOME FOR THE BENEFIT OF TRUSTOR:  The net income of the Trust estate shall be paid in monthly or other convenient installments to or for the benefit of the Trustor during the Trustor's lifetime.

2.2   OTHER DISTRIBUTION: In addition to the net income as delineated above, the Trustee shall distribute out of the principal of the trust estate to or for the benefit of the Trustor during Trustor's lifetime, such sums, as the Trustor shall request. Such distribution shall be paid from the trust estate in accordance with the directions of the Trustor.

   If Trustor, in the opinion of the Trustee, becomes incapacitated or is for any reason unable to request payment, the Trustee may pay to or for his or her benefit so much of the principal of the trust estate as the Trustee, in its discretion, seems necessary or proper for his or her reasonable health, education support and maintenance.

2.3   TRUSTEE MAY PAY THE FOLLOWING: Upon the death of Trustor, the Trustee(s) in the Trustee's discretion, may pay the deceased Trustor's expenses, debts and taxes as hereinafter provided in Article 4.

2.4   DISTRIBUTION OF THE TRUST ESTATE:  Upon the death of Trustor, the Trustee(s) shall divide the trust estate, together with any accrued and undistributed income as follows:

   2.4.1   Trustee shall divide the Trust as then constituted or the entire trust estate as the case may be into as many equal shares as there are children of the Trustor then living and children of the Trustor then deceased who have left lawful issue then living. The words "child," "children," "issue," and "descendants" as used in this Declaration of Trust shall include legally adopted children.  For purposes of this Trust the beneficiaries are identified in Paragraph 1.5, namely NICOLE JOSEPH, MICHAEL JOSEPH and ANTHONY JOSEPH.

   2.4.2   With respect to the share set aside for the children of Trustor, Trustee is directed to forthwith, without limitations, distribute their share, free of Trust directly to them, subject to the below provisions;

   2.4.3   Should any designated child of the Trustor die before becoming entitled to receive distribution of the entire share set aside for such child, such share or its undistributed remainder shall go and be distributed to his or her lawful issue living at the date of said child's death, on the principle of representation; subject, however to other provisions of subparagraphs

2.4.4 and 2.4.5 hereof, or should no issue then living, such share shall go to augment equally the shares then held for the benefit of and then those previously distributed to the Trustor other children, excluding the share of any child who is the deceased leaving no issue then living, but including the share of any deceased child of the Trustor leaving issue then living. Any addition to a partially distributed share shall augment proportionately the distributed and undistributed parts of any share.

2.4.4   Up and to the time the grandchildren of Trustor reach the age of twenty-five (25), as determined by subparagraph 2.4.3, up and to the age of twenty-five (25), the following shall apply.  If the payment of this Trust to which any beneficiary is entitled, shall be insufficient in the discretion of the Trustee to provide for such person's reasonable health, education, support and maintenance, the Trustee shall pay to such person or apply for his or her benefit so much of the principal as the Trustee may deem necessary for such purpose.  In this regard, everything possible should be done to accommodate the beneficiary's needs while he or she is attending an accredited college or university in pursuance of either an undergraduate or graduate degree. Such payment shall not exceed the principal of the share set aside for such person and shall be deducted from it.   Payments may be made to the legal guardian or other person with whom such person resides, or directly to him or her, or otherwise, as the Trustee may from time to time deem advisable.

2.4.5   When grandchild for whom a share shall be retained under the foregoing provisions attains the age of twenty-five (25), ½ all of any of such share, held for such person, shall be distributed to that grandchild outright, with the remaining share, in whatever form or kind to be distributed at age thirty (30) outright, without any further limitations.

2.4.6   If all of the Trustor's children die without leaving issue, then the entire remaining trust estate, to the extent that it is not expended pursuant to the foregoing provisions, including accumulations thereon, shall pass and be distributed equally to the siblings of Trustor as remainder interest and not by way of reversion.

In the event one of the siblings pre-deceases trustor, the heirs of such sibling shall take by representation.  The identity and the respective shares of said heirs shall be determined in all respects as though the death of Trustor had occurred immediately following the happening of the event required for distribution, and according to the laws of succession of separate property. Trustee shall not be liable for any errors or omissions in making such determination.

# ARTICLE 5

# GENERAL PROVISIONS

5.1 LAW FOR CONSTRUCTION OF TRUST: This declaration of trust shall be governed by the laws of the State of California.

5.2 PERPETUITIES SAVINGS CLAUSE: Unless terminated earlier in accordance with other provisions of this declaration of trust, any trust hereby created or created by the exercise of any power hereunder shall terminate 21 years after the death of the last survivor of the following: (1) the Trustor; (2) all the issue of Trustor who are living at the death of the first Trustor to die; and (3) all named beneficiaries who are living at the death of the first Trustor to die. Upon such termination, the trust estate shall be distributed to the beneficiaries for whom a share has been set aside. Each such beneficiary shall receive that beneficiary's share and any accumulations thereon.

5.3 PROPERTY TO RETAIN CHARACTER: All property held by the trustee pursuant to this declaration of trust shall remain respectively the separate property of the Trustor who transferred the property to the trustee.

5.4 SPENDTHRIFT PROVISION: No interest in the principal or income of any trust created under this declaration of trust shall be anticipated, assigned, encumbered or subjected to creditors' claims or legal process before actual receipt by a beneficiary. This provision shall not apply to a Trustor's interest in the trust estate.

5.5 INCAPACITY OF TRUSTEE: Whenever a licensed medical doctor certifies in writing that the trustee cannot discharge the duties of trustee because of mental or physical infirmity, then the office of the trustee shall be deemed vacated and the successor trustee shall serve. Except, however, if after receipt of the certificate, the person alleged to be incompetent gives written notice to the person causing the certificate to be issued that he or she disagrees with the doctor, then the trustee shall continue in office unless he or she resigns or is removed by a court of competent jurisdiction.

Anyone dealing with the trust may rely on the written medical certificate, or photocopy of it, presented to them by the successor trustee, and shall incur no liability to any beneficiary for any dealings with the successor trustee in good faith reliance on the certificate. This provision is inserted in this document to encourage third parties to deal with the successor trustee without the need of court proceedings.

# EXECUTION OF TRUST INSTRUMENT

Trustor and Trustee execute this declaration of trust effective as of the date set forth in Article 1.

Trustor certifies that Trustor and Trustee have read the foregoing declaration of trust and that it correctly states the terms and conditions under which the trust estate is to be held, managed, and disposed of by trustee. Trustor approved the declaration of trust in all particulars and request trustee to execute it.

TRUSTOR:

_____
MARY M. JOSEPH

TRUSTEE:

_____
MARY M. JOSEPH

April 11, 2005

# ACKNOWLEDGMENT

State of California            )
                              ) ss.
County of Orange              )

On April 11, 2005, before me, JEAN L. VAN CAMP, a Notary Public in and for the State of California, personally appeared MARY M. JOSEPH, personally known to me and proven to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the persons, or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

_____
JEAN L. VAN CAMP, Notary Public

JEAN L. VAN CAMP
COMM. # 1360732
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. JUNE 13, 2006

# POUR-OVER WILL

# OF

# MARY M. JOSEPH

# POUR-OVER WILL

## OF

## MARY M. JOSEPH

I, MARY M. JOSEPH, a resident of Orange County, California, declare this to be my Will, and hereby revoke all my prior Wills, Codicils, and Holographic Wills.

## FIRST

I am widowed and I have three children whose names and birthdays are:

| | |
|---|---|
| NICOLE JOSEPH | June 27, 1978 |
| MICHAEL JOSEPH | March 4, 1986 |
| ANTHONY JOSEPH | March 4, 1986 |



All references in this Will to "my children" or my "child" includes any child adopted by me.

## SECOND

It is my intention to dispose of all my separate property.

Earlier, I have executed a trust described as follows:

"The JOSEPH TRUST dated April 11, 2005."

I elect not to exercise any power of appointment exercisable by a Will, which I now have or which may hereafter be conferred on me. No provision in this Will shall be construed as an exercise in whole or in part of such power.

There are no outstanding Community Property assets to be received or disposed of from my previous marriage.

## THIRD

I give all my estate, both real and personal property and wherever situated, residue and remainder of my estate of whatsoever kind and character, to the Trustee(s) then in office under that inter vivos trust designated as The JOSEPH TRUST dated April 11, 2005, created by MARY M. JOSEPH as Trustor, as said declaration of Trust may from time to time be amended.

It is my intention to avoid subjecting the Declaration of Trust dated April 11, 2005 to the jurisdiction of the Probate Code. However, if the Declaration of Trust shall be revoked prior to my death or if for any other reason The JOSEPH TRUST is not in existence at the time of my death or this bequest or devise contained herein to said inter vivos trust is ineffective, then I incorporate said Declaration of Trust dated April 11, 2005, without giving effect to any amendments made subsequently, into this Will, to be considered for all purposes a part of this Will and to be administered as a testamentary trust subject to the Probate Court.

I confirm that any Pay On Death Account, Totten Trust Account, or Joint Tenancy Account shall, on my death, be paid to the beneficiary as named in that trust account.

## FOURTH

Any special bequests and devises will be disposed of in accordance with "The JOSEPH TRUST dated April 11, 2005."

## FIFTH

1.      I nominate my children NICOLE JOSEPH, MICHAEL JOSEPH and ANTHONY JOSEPH, as the Co-Executors of this Will.

2.      No bond shall be required of the Executor(s) nominated in this Will.

3.      None of the executors nominated in this Will shall be personally liable for any loss or damage in connection with the administration of my estate, except in the case of willful misconduct or gross negligence.

4.      I authorize my Executor to sell, with or without notice, at either public or private sale, and to lease any property belonging to my estate, subject only to such confirmation of court as may be required by law.

5.      My executor shall pay from the residue of my estate all inheritance, estate, and other death taxes (including any additional tax that may be assessed under Internal Revenue Code Sections or any generation-skipping transfer tax under Internal Revenue Code Sections), and as may from time to time be amended, including interest and penalties, that may, because of my death, be attributable to any asset included in my probate estate or to any asset passing without probate administration. The tax shall be charged against my estate as though it were an ordinary expense of administration without adjustment among the beneficiaries of my will.

## SIXTH

If any beneficiary or remainderman under this Will in any manner directly or indirectly, contests or attacks this Will or any of its provisions, any share or interest in my estate or in the estate of any trust established by this Will given to that contesting beneficiary or remainderman under this Will shall be rescinded and shall be disposed of in the same manner provided herein as if that contesting beneficiary or remainderman had predeceased me without issue.

## SEVENTH

I direct that funeral service and arrangements be conducted in accordance with the agreement entered into between my children and myself.  Specifically, I wish to be buried, if possible, in Israel.

## EIGHT

1.      I have not entered into either a contract to make a Will or a contract to revoke a Will.

2.      If any part of this Will is held to be void, invalid, or inoperative, I direct that such voidness, invalidity, or inoperativeness shall not affect any other part of this Will, and that the remainder of this Will shall be carried into effect as though such part had not been contained herein.

3.      As used in this Will, the term "issue" shall refer to lineal descendants of all degrees.

4.      If the above disposition is inoperative in whole or in part, whether because the trust has been revoked, or for any other reason, I leave my probate estate to the persons named and in the manner provided for in the trust described in this Will, and which trust is hereby incorporated by this reference.

5.    As used in this Will, the masculine, feminine, or neuter gender, and the singular or plural number shall each be deemed to include the others whenever the context so indicates.


I subscribe the foregoing Will on April 11, 2005.

MARY M. JOSEPH


The undersigned, each for themselves, declares that:

(1) This pour-over will, consisting of four pages, including the pages signed by the Testator and the witnesses, was on this date signed in our presence and in the presence of each of us by MARY M. JOSEPH; herein called the "Testatrix."

(2) At the time she subscribed the foregoing instrument the Testatrix declared to us that it was her Will.

(3) The Testatrix was, at the time she subscribed the foregoing instrument, over the age of 18 years and appeared to be of sound mind.

(4) I have no knowledge of any facts indicating the foregoing instrument, or any part of it, was made by duress, menace, fraud, or undue influence.

(5) At the request and in the presence of the Testatrix, and in the presence of each other, we subscribe our names as witnesses to the foregoing Will.

We, each for ourselves, declare under penalty of perjury that the foregoing is true and correct.

Executed on April 11, 2005, in Orange County, California.


Name                                    28381 CLARETON DRIVE
                                        Address
                                        LAGUNA HIGUEL, CA 92677

Name                                    24545 VIA CARLOS
                                        Address
                                        LAGUNA NIGUEL CA 92677

# ADVANCE HEALTH CARE DIRECTIVE

## FOR

## MARY M. JOSEPH

# ADVICE TO MARY M. JOSEPH

## Regarding

# ADVANCE HEALTH CARE DIRECTIVE

This ADVANCE HEALTH CARE DIRECTIVE is an important legal document.  Before executing this document, you should know these important facts:  California Law and its applicable Probate Code Sections gives you the ability to insure that your health care wishes are known and considered if you are unable to make health care decisions yourself.

1.      This document gives the person you designate as your agent (Attorney in Fact) the power to make health care decisions for you.  Your agent must act consistently with your desires as stated in this document or as you may have made known to your agent.

2.      Except as you otherwise specify in this document, this document gives your agent the power to consent to your doctor not giving treatment or stopping treatment necessary to keep you alive.  The document gives legal authority to make decisions about your medical care if you become unable to make these decisions yourself.

3.      Notwithstanding this document, you have the right to make medical and other health care decisions for yourself so long as you can give informed consent with respect to a particular decision.  In addition, no treatment may be given to you over your objection.  Health care necessary to keep you alive may not be stopped or withheld if you object at the time.

4.      This document gives your agent authority to consent, to refuse to consent, or to withdraw consent to any care, treatment, service, or procedure to maintain, diagnose, or treat a physical or mental condition. This power is subject to any statement of your desires and any limitations that you include in this document. You may state in this document any types of treatment that you do not desire.

5.      In addition, a court can take away the power of your agent to make health care decisions for you if your agent;   (1) authorizes anything that is illegal, (2) acts contrary to your own desires, or (3) where your desires are not known, does anything that is clearly contrary to your best interest.

6.      Unless you specify a shorter period in this document, this power will exist indefinite from the date you execute this document or until you change it.

7.    You have the right to revoke the authority of your agent by notifying that person or your treating doctor, hospital, or other health care provider orally or in writing of the revocation.

8.    Your agent has the right to examine your medical records and to consent to their disclosure unless you limit this right in this document.

9.    Unless you otherwise specify in this document, this document gives your agent the power after you die to;  (1) authorize an autopsy, (2) donate your body or parts thereof for transplant or therapeutic or educational or scientific purposes, and (3) direct the disposition of your remains.  (See last page)

10.    If there is anything in this document that you do not understand, please ask a Health Care Professional or an Attorney to explain it to you.

11.    You should discuss your wishes with your Agent(s) and Alternate Agent(s) identified in this document and give them a copy.  Make sure these persons understand your wishes, their responsibility and that they are willing to accept this responsibility.

12.    It is recommended that a copy of the ADVANCE HEALTH CARE DIRECTIVE be placed in your medical file.

This ADVANCE HEALTH CARE DIRECTIVE will not be valid for making health care decisions unless it is either; (1) signed by two qualified adult witnesses who are personally known to you and who are present when you sign or acknowledge your signature or (2) acknowledged before a notary public in California.

I have read the above document.

April 11, 2005

MARY M. JOSEPH

# ADVANCE HEALTH CARE DIRECTIVE

1.      DESIGNATION OF HEALTH CARE AGENT:   I, MARY M. JOSEPH, the principal do hereby designate and appoint the following as my Attorney in Fact (agent) to make health care decisions for me as authorized in this four page document:

AGENT(S):  My children NICOLE JOSEPH, MICHAEL JOSEPH and ANTHONY JOSEPH.

        For the purposes of this document, "health care decision" means consent, refusal of consent, or withdrawal of consent to any care, treatment, service, or procedure to maintain, diagnose, or treat an individual's physical or mental condition.

2.      DESIGNATION OF ALTERNATE AGENTS: If the person designated as my agent above is not available, or becomes ineligible to act as my agent to make a health care decision for me or loses the mental capacity to make health care decisions for me, or if I revoke that person's appointment or authority to act as my agent to make health care decisions for me, then I designate and appoint the following person(s) to serve as my agent(s) to make health care decisions for me as authorized in this document:

ALTERNATE AGENT(s):  EDNA BEN-SUSAN, my sister.

3.      CREATION OF ADVANCE HEALTH CARE DIRECTIVE: By this document I intend to create an ADVANCE HEALTH CARE DIRECTIVE under applicable sections of the California Civil Code and Probate Code. This ADVANCE HEALTH CARE DIRECTIVE shall not be affected by my subsequent incapacity.

4.      AUTHORITY Of AGENT:  If my primary physician finds that I can not make my own health care decisions, I grant my agent full power and authority to make these decisions for me, subject to any health care instructions set forth below.  My agent will have the right to consent, refuse consent, or withdraw consent to any medical care or services, such as tests, drugs, surgery or artificial nutrition and hydration (feeding by tube or vein) and all other forms of health care, including cardiopulmonary resuscitation (CPR).   My agent will have the right to choose or reject my physician, other medical care professionals or health care facilities.

        My agent shall make health care decisions that are consistent with my desires and values as stated in this document, or as stated in writing signed and dated by me and attached to this document.  If one of the alternate agents cannot act or is unable to act, then the remaining agent shall have the authority to act alone.

        My agent may not consent to committing me to or placing me in a mental health treatment facility, or to convulsive treatment, psychosurgery, sterilization or abortion.

5.     STATEMENT OF DESIRES, SPECIAL PROVISIONS, AND LIMITATIONS: In exercising the authority, as further evidenced by my signature on this four page document, my agent shall act consistently with my desires and values as stated below;

In the absence of my ability to give directions regarding the use of life-sustaining procedures, my agent, as appointed in this ADVANCE HEALTH CARE DIRECTIVE, shall assert my legal right to refuse medical or surgical treatment and I accept the consequences from such refusal.  If I am in a coma and the attending doctor has indicated that there is no chance of my regaining consciousness, it is my intention that all my life support systems be withdrawn, including food and nourishment, so that I may be permitted to die naturally.  I ask that my physician(s) allow me to die as gently as possible

I do not want my life to be prolonged, and I do not want life-sustaining treatment to be provided or continued if the burdens of the treatment outweigh the expected benefits. I want my agent to consider the relief of surrendering and the quality as well as the extent of the possible extension of my life in making decisions concerning life-sustaining treatment.  If I am suffering from an irreversible condition that renders me unable to make decisions for myself, and life-support treatments are needed to keep me alive, I request that all such treatments, other than those needed to keep me comfortable be withheld.

6.     INSPECTION AND DISCLOSURE OF INFORMATION RELATING TO MY PHYSICAL OR MENTAL HEALTH:  Subject to any limitations, as delineated in this document, my agent has the power and authority to do all of the following:

6.1     Request, review, and receive any information, verbal or written, regarding my physical or mental health, including, but not limited to, medical and hospital records.

6.2     Execute on my behalf any releases or other documents that may be required in order to obtain this information and consent to the disclosure of this information.

7.     SIGNING DOCUMENTS, WAIVERS, and RELEASES: Where necessary to implement the health care decisions that my agent is authorized to make, my agent has the power and authority to execute on my behalf all of the following:

7.1     Documents titled or purporting to be a "Refusal to Permit Treatment" and "Leaving Hospital Against Medical Advice" including any necessary waiver or release from liability required by a hospital or physician.

7.2     To have priority over any other person to act for the principal in all matters of health care decisions, but the agent does not have authority to make a particular health care decision if I am able to give informed consent with respect to that decision.

8.    AUTOPSY; ANATOMICAL GIFTS; DISPOSITION OR REMAINS: Subject to any limitations as delineated in this document or in a writing signed and dated by me and attached to this document, my agent has the power and authority to do all of the following:

8.1    Authorize an autopsy under Section 7113 of the Health and Safety Code, as may be amended from time to time.

8.2    Make a disposition of a part or parts of my body under the Uniform Anatomical Gift Act Chapter 3.5 (commencing with Section 7150.5) of Part I of Division 7 of the Health and Safety Code as hereafter may be amended.

8.3    Direct the disposition of my remains under Section 7100 of the Health and Safety Code.

9.    COPIES:  My agent and others may use copies of this document as though they were originals.

10.    Upon execution of the ADVANCE HEALTH CARE DIRECTIVE, I hereby revoke, cancel and terminate any prior executed ADVANCE HEALTH CARE DIRECTIVE.

I further declare that I am executing this ADVANCE HEALTH CARE DIRECTIVE in Orange County, California, on April 11, 2005.

_____
MARY M. JOSEPH

## ACKNOWLEDGEMENT

State of California    ) ss.
County of Orange      )

On April 11, 2005, before me, JEAN L. VAN CAMP, a Notary Public in and for the State of California, personally appeared MARY M. JOSEPH, personally known to me and proven to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal

_____
Jean L. Van Camp, Notary Public



JEAN L. VAN CAMP
COMM. # 1360732
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. JUNE 13, 2006

## CERTIFICATE OF LEGAL COUNSEL

I, JEAN L. VAN CAMP, am an attorney at law duly licensed to practice law in the State of California.

I represent MARY M. JOSEPH with reference to the above ADVANCE HEALTH CARE DIRECTIVE. I have advised MARY M. JOSEPH of her rights in connection with this ADVANCED HEALTH CARE DIRECTIVE and the law applicable thereto, and the consequences of signing or not signing this ADVANCE HEALTH CARE DIRECTIVE. After being so advised, MARY M. JOSEPH executed this ADVANCE HEALTH CARE DIRECTIVE on April 11, 2005.

Jean L. Van Camp
Member of California Bar

## ADDITIONAL STATEMENT OF DESIRES, SPECIAL PROVISIONS, AND LIMITATIONS

LIMITS ON AUTOPSY: Only those authorized by statute.

LIMITS ON DONATION OF BODY ORGANS: Only those authorized by my agent(s).

FUNERAL INSTRUCTIONS: I direct that funeral service and arrangements be conducted in accordance with the agreement entered into between my agent(s) and myself.

If no limits or instructions are indicated, and the principal has not instructed the agent otherwise, the agent has the discretion as to the above items.

Dated:  April 11, 2005

MARY M. JOSEPH

EXHIBIT "B"

☐ ORIGINAL

| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| COUNTY OF CHARLESTON | ) | NINTH JUDICIAL CIRCUIT |
| TIFFANY BROOKE WOODYARD, | ) | CASE NO.: 15-CP-10-5229 |
| Plaintiff, | ) | |
| vs. | ) | |
| NICOLE IDA JOSEPH | ) | **ANSWER AND COUNTERCLAIM** |
| Defendants. | ) | (JURY TRIAL DEMANDED) |

**TO:   MICHAEL A. TIMBES, ESQUIRE, ATTORNEY FOR THE PLAINTIFF:**

### FOR A FIRST DEFENSE

NOW COMES THE DEFENDANT Nicole Ida Joseph by and through her attorney, Thomas C. Brittain, and hereby answers the Verified Complaint and alleges by way of a Counterclaim as follows:

1.  The Defendant answering the Verified Complaint of the Plaintiff would respectfully show unto the Court, that each and every allegation not specifically admitted herein is expressly denied, with strict proof required thereof, to the extent that it is appropriate in these pleadings.

2.  That the allegations of Paragraph 1 are denied with strict proof required thereof.

3.  That the allegations of Paragraph 2 are denied with strict proof required thereof.

4.  That the allegations of Paragraph 3 are denied with strict proof required thereof.

5.  That the allegations of Paragraph 4 are denied with strict proof required thereof.

6.  That the allegations of Paragraph 5 are denied with strict proof required thereof.

7.  That the allegations of Paragraph 6 are, upon information and belief, admitted. Further, Defendant is a resident of Horry County, South Carolina.

8.  That the allegations of Paragraph 7 are denied with strict proof required thereof. Further, Defendant is a resident of Horry County, South Carolina which is also the location of Defendant's business, "Current XXVII" and, therefore, Horry County, South Carolina is the proper venue for this action.

Page 1

9.      That the allegations of Paragraph 8 are denied with strict proof required thereof.

10.     That the allegations of Paragraph 9 do not require an affirmative response from this Defendant.  To the extent said allegations could be construed to form a cause of action against Defendant, said allegations are denied with strict proof required thereof.

11.     That the allegations of Paragraph 10 are denied with strict proof required thereof.

12.     That the allegations of Paragraph 11 are, upon information and belief, admitted insomuch as "Current XXVII" is not registered with the South Carolina Secretary of state; as to all remaining allegations, denied with strict proof required thereof.

13.     That the allegations of Paragraph 12 are denied with strict proof required thereof.

14.     That the allegations of Paragraph 13 are denied with strict proof required thereof. Further, there is no Retail License from the South Carolina Department of Revenue marked as "Exhibit A" to Plaintiff's Complaint.

15.     That the allegations of Paragraph 14 are denied with strict proof required thereof. Further, there is no Business License from the City of Myrtle Beach marked as "Exhibit B" to Plaintiff's Complaint.

16.     That the allegations of Paragraph 15 are, upon information and belief, admitted insomuch as Defendant handled all negotiations and discussions pertaining to the temporary lease for "Current XXVII" in the Market Common, which continues to operate; as to all remaining allegations, denied with strict proof required thereof.

17.     That the allegations of Paragraph 16 are, upon information and belief, admitted insomuch as Defendant opened and operated a second "Current XXVII" retail store in Charlotte, North Carolina which continues to operate at this time; as to all remaining allegations, denied with strict proof required thereof.

18.     That the allegations of Paragraph 17 are denied with strict proof required thereof.

19.     That the allegations of Paragraph 18 are denied with strict proof required thereof.

20.     That the allegations of Paragraph 19 are denied with strict proof required thereof.

21.     That the allegations of Paragraph 20 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

22.     That the allegations of Paragraph 21 are denied with strict proof required thereof;

further, Defendant contends that no partnership exists between she and Plaintiff.

23.   That the allegations of Paragraph 22 are, upon information and belief, admitted insomuch as Defendant had to travel to California for a period of time due to her mother's health concerns; as to all remaining allegations, denied with strict proof required thereof.

24.   That the allegations of Paragraph 23 are admitted insomuch as Defendant asked her employee, Plaintiff, for assistance while she was out of town caring for her mother; as to all remaining allegations, denied with strict proof required thereof.

25.   That the allegations of Paragraph 24 are denied with strict proof required thereof.

26.   That the allegations of Paragraph 25 are denied with strict proof required thereof.

27.   That the allegations of Paragraph 26 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

28.   That the allegations of Paragraph 27 are denied with strict proof required thereof.

29.   That the allegations of Paragraph 28 are denied with strict proof required thereof.

30.   That the allegations of Paragraph 29 are denied with strict proof required thereof.

31.   That the allegations of Paragraph 30 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

32.   That the allegations of Paragraph 31 are admitted insomuch as Defendant changed the Market Common store's locks; as to all remaining allegations, denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

33.   That the allegations of Paragraph 32 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

34.   That the allegations of Paragraph 33 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

35.   That the allegations of Paragraph 34 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

36.   That the allegations of Paragraph 35 are denied with strict proof required thereof.

37.   That the allegations of Paragraph 36 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

38.     That the allegations of Paragraph 37 are denied with strict proof required thereof.

39.     That the allegations of Paragraph 38 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

40.     That the allegations of Paragraph 39 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

41.     That the allegations of Paragraph 40 do not require an affirmative response from this Defendant.  To the extent said allegations could be construed to form a cause of action against Defendant, said allegations are denied with strict proof required thereof.

42.     That the allegations of Paragraph 41 do not require an affirmative response from this Defendant.  To the extent said allegations could be construed to form a cause of action against Defendant, said allegations are denied with strict proof required thereof.

43.     That the allegations of Paragraph 42 do not require an affirmative response from this Defendant.  To the extent said allegations could be construed to form a cause of action against Defendant, said allegations are denied with strict proof required thereof.

44.     That the allegations of Paragraph 43 are denied with strict proof required thereof.

45.     That the allegations of Paragraph 44 are, upon information and belief, admitted insomuch as Plaintiff, on one or more occasion, used Defendant's computer to access her personal e-mail account (with Defendant's permission due to the fact Plaintiff did not own an computer) and would then leave that account open on Defendant's computer; however, any of Plaintiff's personal e-mail communications that Defendant may have inadvertently viewed while using her own computer and finding Plaintiff's e-mail account open and in plain sight is the sole fault and negligence of Plaintiff; as to all remaining allegations, denied with strict proof required thereof.

46.     That the allegations of Paragraph 45 are denied with strict proof required thereof.

47.     That the allegations of Paragraph 46 do not require an affirmative response from this Defendant.  To the extent said allegations could be construed to form a cause

of action against Defendant, said allegations are denied with strict proof required
thereof.

48.  That the allegations of Paragraph 47 are denied with strict proof required thereof.

49.  That the allegations of Paragraph 48 are denied with strict proof required thereof.

50.  That the allegations of Paragraph 49 are denied with strict proof required thereof.

51.  That the allegations of Paragraph 50 are denied with strict proof required thereof.

52.  That the allegations of Paragraph 51 do not require an affirmative response from
this Defendant.  To the extent said allegations could be construed to form a cause
of action against Defendant, said allegations are denied with strict proof required
thereof.

53.  That the allegations of Paragraph 52 are denied with strict proof required thereof;
further, Defendant contends that no partnership exists between she and Plaintiff.

54.  That the allegations of Paragraph 53 are denied with strict proof required thereof;
further, Defendant contends that no partnership exists between she and Plaintiff.

55.  That the allegations of Paragraph 54 are denied with strict proof required thereof.

56.  That the allegations of Paragraph 55 are denied with strict proof required thereof.

57.  That the allegations of Paragraph 56 are denied with strict proof required thereof;
further, Defendant contends that no partnership exists between she and Plaintiff.

58.  That the allegations of Paragraph 57 are denied with strict proof required thereof.

59.  That the allegations of Paragraph 58 do not require an affirmative response from
this Defendant.  To the extent said allegations could be construed to form a cause
of action against Defendant, said allegations are denied with strict proof required
thereof.

60.  That the allegations of Paragraph 59 do not require an affirmative response from
this Defendant.  To the extent said allegations could be construed to form a cause
of action against Defendant, said allegations are denied with strict proof required
thereof.

61.  That the allegations of Paragraph 60 are denied with strict proof required thereof.

62.  That the allegations of Paragraph 61 are denied with strict proof required thereof.

63.  That the allegations of Paragraph 62 are denied with strict proof required thereof.

64.     That the allegations of Paragraph 63 do not require an affirmative response from
        this Defendant.  To the extent said allegations could be construed to form a cause
        of action against Defendant, said allegations are denied with strict proof required
        thereof.

65.     That the allegations of Paragraph 64 are denied with strict proof required thereof.

66.     That the allegations of Paragraph 65 are denied with strict proof required thereof;
        further, Defendant contends that no partnership exists between she and Plaintiff.

67.     That the allegations of Paragraph 66 do not require an affirmative response from
        this Defendant.  To the extent said allegations could be construed to form a cause
        of action against Defendant, said allegations are denied with strict proof required
        thereof.

68.     That the allegations of Paragraph 67 are denied with strict proof required thereof;
        further, Defendant contends that no partnership exists between she and Plaintiff.

69.     That the allegations of Paragraph 68 are denied with strict proof required thereof;
        further, Defendant contends that no partnership exists between she and Plaintiff.

70.     That the allegations of Paragraph 69 are denied with strict proof required thereof;
        further, Defendant contends that no partnership exists between she and Plaintiff.

71.     That the allegations of Paragraph 70 are denied with strict proof required thereof;
        further, Defendant contends that no partnership exists between she and Plaintiff.

72.     That the allegations of Paragraph 71 are denied with strict proof required thereof.

73.     That the allegations of Paragraph 72 are denied with strict proof required thereof.

74.     That the allegations of Paragraph 73 do not require an affirmative response from
        this Defendant.  To the extent said allegations could be construed to form a cause
        of action against Defendant, said allegations are denied with strict proof required
        thereof.

75.     That the allegations of Paragraph 74 are denied with strict proof required thereof.

76.     That the allegations of Paragraph 75 are denied with strict proof required thereof;
        further, Defendant contends that no partnership exists between she and Plaintiff.

77.     That the allegations of Paragraph 76 are denied with strict proof required thereof;
        further, Defendant contends that no partnership exists between she and Plaintiff.

78.    That the allegations of Paragraph 77 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

79.    That the allegations of Paragraph 78 are admitted insomuch as it is Defendant's duty, as the sole proprietor of "Current XXVII" to keep and maintain accurate books at its principal place of business; as to all remaining allegations, denied with strict proof required thereof; further Defendant contends that no partnership exists between she and Plaintiff.

80.    That the allegations of Paragraph 79 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

81.    That the allegations of Paragraph 80 are denied with strict proof required thereof.

82.    That the allegations of Paragraph 81 do not require an affirmative response from this Defendant.  To the extent said allegations could be construed to form a cause of action against Defendant, said allegations are denied with strict proof required thereof.

83.    That the allegations of Paragraph 82 are denied with strict proof required thereof.

84.    That the allegations of Paragraph 83 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

85.    That the allegations of Paragraph 84 are denied with strict proof required thereof.

86.    That the allegations of Paragraph 85 are denied with strict proof required thereof.

87.    That the allegations of Paragraph 86 are denied with strict proof required thereof.

88.    That the allegations of Paragraph 87 do not require an affirmative response from this Defendant.  To the extent said allegations could be construed to form a cause of action against Defendant, said allegations are denied with strict proof required thereof.

89.    That the allegations of Paragraph 88 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

90.    That the allegations of Paragraph 89 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

91.    That the allegations of Paragraph 90 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

92.   That the allegations of Paragraph 91 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

93.   That the allegations of Paragraph 92 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

94.   That the allegations of Paragraph 93 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff and that Defendant has always been the sole proprietor of this business.

95.   That the allegations of Paragraph 94 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

96.   That the allegations of Paragraph 95 are denied with strict proof required thereof; further, Defendant contends that no partnership exists between she and Plaintiff.

### FOR A SECOND DEFENSE

97.   Defendants assert Plaintiff's Complaint fails to state facts sufficient to constitute a cause of action and/or a claim upon which relief can be granted against Defendant, and, therefore, should be dismissed pursuant to Rule 12(b)(6) of the South Carolina Rules of Civil Procedure.

### FOR A THIRD DEFENSE

98.   Defendant asserts that any recovery by Plaintiff must be offset or reduced, abated, or apportioned to the extent that any other party's actions caused or contributed to the alleged damages, if any existed

### FOR A FOURTH DEFENSE AND BY WAY OF A COUNTERCLAIM
### (FRAUD/NEGLIGENT MISREPRESENTATION)

99.   Defendant reasserts the admissions and denials in Paragraphs 1 through 98 above as if set forth verbatim.

100.  That Defendant initially approached her best friend, Plaintiff, about working for her in a new business venture she was starting.

101.  That, initially, Defendant opened her business in a small vacant area inside Her Body and Soul Spa located in Myrtle Beach, South Carolina where Plaintiff was employed.

102.    That, when Defendant opened her business "Current XXVII" it was as a sole proprietorship with Defendant being responsible for all of the startup costs.

103.    That no corporate documents were signed pertaining to "Current XXVII" and the business was not registered with the South Carolina Secretary of State.

104.    That, once the business was opened, Plaintiff came to work for Defendant.

105.    That Defendant later opened a second business location in Charlotte, North Carolina, also as a sole proprietorship.

106.    That Defendant was responsible for all of the startup costs of the second location of "Current XXVII".

107.    That in June 2015 Defendant learned that her mother had been diagnosed with state 3 lung cancer and made arrangements to travel to California to be with her mother.

108.    That Defendant asked Plaintiff, her friend and employee, to handle operations of the business while she was gone and Plaintiff assured her that she would.

109.    That Defendant relied upon the assurances of Plaintiff that she would handle the day to day operations of the businesses while she was out of town, emergently, to help care for her mother.

110.    That two days after Defendant left for California Plaintiff went to Charleston, South Carolina on vacation for several days, leaving the newly opened Charlotte store unsupervised during this time period.

112.    Plaintiff then returned to the business for three days and the left again to attend a bachelorette party in Las Vegas, Nevada, thereby leaving the store unsupervised for an additional eight days.

113.    That, as a result of Plaintiff's actions, Defendant's business "Current XXVII" suffered loss of revenue and, further, this occurred during the critical start up period for the Charlotte location thereby causing irreparable harm.

114.    Further, that Plaintiff has, on numerous occasions, requested money from Defendant in order to move to New York to be with her boyfriend.

115.    That Defendant refused to loan and/or give Plaintiff money to move which angered Plaintiff.

116.   That, upon information and belief, in response to Defendant's refusal to give her money, Plaintiff brought this frivolous lawsuit based upon fraudulent claims and allegations against Defendant

117.   That Defendant is entitled to recovery of actual and treble damages in the form of attorneys' fees and costs in pursuing this action as well as punitive damages resulting from Plaintiff's fraudulent actions and negligent misrepresentations to Defendants.

WHEREFORE, Defendant prays the court dismiss Plaintiff's Verified Complaint, that judgment be entered in their favor, actual and treble damages as well as punitive damages be awarded to Defendant, and this Court grant such other and further relief as this Court deems just and proper.

THE BRITTAIN LAW FIRM, P.A.

Thomas C. Brittain, Esquire
Mary Madison B. Langway, Esquire
4614 Oleander Drive
Myrtle Beach, SC 29577
(843) 449.8562
(843) 497.6124 (Fax)
**Attorneys for Defendant Nicole Ida Joseph**

Myrtle Beach, South Carolina
January 14, 2016

Page 10

# SETTLEMENT AGREEMENT
### &
# MUTUAL GENERAL RELEASE

**BE IT KNOWN**, that Tiffany B. Woodyard ("Woodyard") and Nicole I. Joseph ("Joseph") (Woodyard and Joseph are collectively the "Parties"), have entered into this Settlement Agreement and Mutual General Release (the "Agreement"), subject to the terms and conditions set forth herein, intending to be legally bound.

## RECITALS

WHEREAS, a dispute and disagreement arose between the Parties arising from their dealings and interactions in relation to, among other things, a retail business known to the Parties as Current XVII, which for the purposes of this Agreement includes any related enterprises, entities, or business dealings that operated under the tradenames Current XVII, Current Society, or any other name, and includes any business in which the Parties may have been mutually affiliated in any capacity (all of which are collectively the "Business"); and

WHEREAS, the Parties' disputes and disagreements also involved various claims arising from the Parties' interactions with one another unrelated to the Business; and

WHEREAS, a lawsuit asserting various claims and counterclaims was commenced in the Charleston County Court of Common Pleas (Case No.: 2015-CP-10-5229) arising from and relating to the Parties' various disputes and disagreements (the "Dispute") and in which each Party asserted claims against the other; and

WHEREAS, the various claims of each Party are specifically denied and disputed by the other, and neither Party admits any liability or wrongdoing to the other; and

WHEREAS, the Parties are desirous to fully, completely and finally settle their Dispute upon the terms set forth herein and to further release and discharge each other from any and every possible claim or liability between them arising or relating to the Business, the Dispute, or their dealings and interactions with one another from the beginning of time until the date of this Agreement,

NOW, THERFORE, in consideration of the mutual promises, representations, warranties, and obligations set forth herein, and in exchange for the Mutual and General Release contained herein, together with the other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties do hereby represent, covenant, and agree as follows:

## TERMS OF SETTLEMENT

1. Recitals. The above recitals are true and correct and incorporated herein as material terms to this Agreement.

2.  <u>Settlement Sum by way of Installments and Confession of Judgment</u>.  Joseph agrees and shall timely pay to Woodard the following payments:

> (A) An initial payment of not less than Two Thousand Dollars ($2,000.00) shall be paid and delivered on or before April 1, 2018.

> (B) On or before May 1, 2018, and on the first day of every consecutive month thereafter, an installment payment of not less than One Thousand Five Hundred Dollars ($1,500.00) subject to the provisions of Subparagraphs (C) and (D) below.

> (C) To secure the payments required under this Agreement, Joseph shall sign and deliver an executed original Confession of Judgment in the form attached hereto as "Exhibit A" in favor of Woodyard in the amount of Thirty Thousand and 00/100 Dollars ($30,000.00) (the "Judgment Amount").

> (D) The Parties agree that Woodyard shall not enroll, record, or otherwise seek enforcement of the Confession of Judgment so long as Joseph timely makes the payments required in Subparagraphs (A) and (B) above.  **Further, the Parties agree that if Joseph *timely* makes the initial payment and each installment payment required thereafter, upon paying the sum total of Fifteen Thousand Dollars ($15,000.00) to Woodyard, the Confession of Judgment shall be deemed satisfied in full, and Woodyard shall destroy or cause to be destroyed the Confession of Judgment and shall never under any circumstances seek to record the same**.  If the initial payment is not timely made, or any installment payment is not received in full by the 5th day of the month in which it is due, or $15,000.00 has not been paid and delivered on or before January 1, 2019, Woodyard, or her attorney, shall be entitled to enroll the Confession of Judgment, less any amounts already received, and may thereafter seek collection upon the Confession of Judgment from Joseph, together with all costs and attorney fees reasonably incurred in such efforts.

3.  <u>Manner and Place of Payment</u>.  The April 1, 2018, initial payment and all subsequent installment payments shall be made payable to "Thurmond Kirchner & Timbes, P.A. f/b/o Tiffany Woodyard" and delivered to the law offices of Thurmond Kirchner and Timbes, PA., at 15 Middle Atlantic Wharf, Charleston, South Carolina  29401.

4.  <u>Representations and Warranties of Joseph</u>.  Joseph represents and warrants that she is, and has always been the sole proprietor, owner, officer, member, manager, or shareholder of the Business, specifically including Current XXVII, and Woodyard's involvement with, and efforts taken on behalf of the Business were strictly and exclusively in the capacity of an employee and in no other capacity, the same being directed and controlled by the Business and from which Woodyard received no benefit other than regular wages. Woodyard does not have, nor did she ever have, any ownership interest in the Business, Current XXVII or its profits; nor does Woodyard have any personal liability for any debt, obligation, requirement, tax, or other withholding arising from or related to the Business.

5.   Representations and Warranties of Woodyard.  Woodyard warrants and represents that any and all monies advanced or paid to Joseph or the Business were personal loans bearing zero percent interest, and these loans did not at the time or at any time thereafter result in a right or claim to any ownership interest in the Business or its proceeds or profits, nor did such loans result in Woodyard having any right or ability to manage or control the conduct of the Business or its employees. Woodyard further covenants that all such loans are satisfied in full through the performance of this Agreement. Woodyard further warrants and represents that she has been paid all wages and/or overtime pay due to her as employee of the Business.

6.   Indemnification.  Joseph is, and shall remain, solely responsible for all debts, obligations, encumbrances, liens, taxes, withholdings, penalties, fines, fees, losses, judgments, claims, or any other liability of whatever kind or nature, whether past, present or which might hereafter arise in relation to the Business or any related enterprise in which Woodyard was involved.  Joseph further covenants that she shall indemnify, defend, and hold Woodyard harmless for any claim, judgment, liability, debt, action, charge, penalty, cost, attorney fee, tax, withholding or other expense, including the costs of any proceeding commenced against Woodyard in relation to the Business, regardless of whether the liability presently exists or might hereafter arise.

7.   Mutual Covenants of Non-Disclosure and Non-Disparagement. As a material term of this Agreement and the releases contained herein, and upon further consideration of the amount of Five and 00/100 Dollars ($5.00), to each Party paid, the Parties agree to be subject to a continuing obligation of confidentiality and non-disparagement which shall include an obligation not to disclose the terms of this Agreement or any information that was learned through the litigation of the Dispute or otherwise which relates to the Business.  The Parties also agree not to disparage or offer negative opinions or commentary, either in a private or public, or on any social media, about each other or each other's family members, regardless of the nature or content of the subject matter. Additionally, the Parties mutually agree not to initiate contact (directly or indirectly, in person or through electronic means) with each other or their immediate family members.  This mutual covenants and obligations of non-disclosure and non-disparagement shall survive the termination of this Agreement and shall exist for the lives of the Parties.

8.   Mutual and General Release of All Claims:

**The Parties, for themselves, and on behalf of their respective heirs, executors, beneficiaries, assigns, and any other person or entity claiming an interest through them or on their behalf, do hereby fully and completely release, compromise, waive and forever discharge each other, together with each other's heirs executors, beneficiaries, assigns, successors, agents, employees, owners, managers, attorneys, insurers, and properties, and all other persons, associations, entities, and corporations whether named or referred to herein or not, of and from every claim, demand, right, cause of action, damage, physical or mental injury or distress, economic loss, relief, cost, expense, attorney's fee, and judgment of whatsoever kind or nature, whether in law or in equity, arising from or in any way relating to the Business, the Dispute, or Parties' dealings and interactions with each other, from the beginning of time until the date of this Agreement, including by reason of any known or unknown injury or harm sustained by either Party or both, or any other damage of whatsoever kind, which if known or discovered could give rise to a claim.**

**This Mutual Release shall be general and interpreted in the broadest sense possible such that the Parties intend that no claims of any kind shall survive this Agreement. The Parties acknowledge and assume the risk of releasing all claims known and unknown against the other. This Agreement shall not be construed as an admission of liability on behalf of either Party as to any fact or matter in Dispute.**

9. <u>Governing Law</u>:  This Agreement shall be subject to the laws of the State of South Carolina.

10. <u>Execution in Counterparts</u>:  Except as to the Confession of Judgment, the Parties agree that this Agreement may be executed in parts, and that the executed copy may be transmitted by email or other electronic means.  Enforcement of this Agreement shall not necessitate an original copy, but that Woodyard shall retain and hold in trust the original Confession of Judgment.

11. <u>Admissibility of this Agreement</u>:  The Parties agree that this Agreement shall be admissible in any proceeding in which a right or privileged provided in this Agreement is sought to be enforced.  To the extent that the original Confession of Judgment contemplated by this agreement is not provided to Woodyard contemporaneous with the executed copy of this Agreement or within 10 days thereafter, Woodyard shall be entitled to submit this Agreement to the Court in which the Dispute is pending as conclusive evidence against Joseph upon which the Court shall issue Judgement against Joseph in the amount of Thirty-Thousand and no/100 Dollars ($30,000.00), and notwithstanding any provision herein to the contrary, Woodyard shall be entitled to enrolled the same immediately thereafter.

12. <u>Voluntariness</u>:  This Agreement shall constitute the full agreement of the Parties, the same having been advised and represented by competent counsel.

13. <u>Severability</u>:  If any portion of this Agreement shall be deemed void, voidable, or unenforceable, it shall have no effect on the other terms of this Agreement.

14. <u>Enforcement and Attorney Fees/Costs</u>:  Any party to, or beneficiary of this Agreement, who shall be required to seek enforcement of this Agreement through any proceeding, or who otherwise successfully relies upon this Agreement in any claim or cause of action brought against them, shall be entitled to the reasonable attorney fees and costs incurred.

15. <u>Dismissal of all Actions with Prejudice</u>:   Upon Woodyard's receipt of the Original Confession of Judgment contemplated herein, the Parties agree and hereby instruct their attorneys to file a stipulation of dismissal, with prejudice, of Case No.:  2015-CP-10-5229.

16. <u>Effective Date:</u>  This Agreement shall be effective upon execution by both Parties.

IT IS SO AGREED!

[signature pages to follow]

EXECUTION PAGE FOR JOSEPH

IN WITNESS THEREOF we set forth our hands and seals this day of 5th ~~December,~~ January ~~2017.~~ 2018

_Nicole Ida Joseph_ (signature)

**Nicole Ida Joseph**

STATE OF  North Carolina )
                                              )            ACKNOWLEDGMENT
COUNTY OF  Rutherford  )

I,  Christina L. Shahan , Notary Public for Rutherford County do hereby certify that Nicole Joseph who is known to me or produced satisfactory proof of identity, personally appeared before me this day and acknowledged the due execution of the foregoing instrument by her and acknowledged that she fully understood its contents and that she executed the same as her free act and deed.

SWORN and subscribed before me
this 5th day of January, ~~2017.~~ 2018.

_Christina L Shahan_ (signature)

Notary Public for Rutherford County, NC

My Commission Expires:

Feb 17, 2018

CHRISTINA L SHAHAN
NOTARY PUBLIC
RUTHERFORD COUNTY, NC
My Commission Expires  2/17/18

Page 6 of 8

# EXHIBIT "C"

## Emails, Text Messages, and Letters previously authenticated

Copy Of Mary's Advance Health Care Directive - Yahoo Mail                                                    10/29/20, 12:29 PM

**Copy Of Mary's Advance Health Care Directive**                                        nmtinc@yahoo.co.../Inbox

 **Paul Raber** <psraberlaw@gmail.com>                                              Dec 6, 2016 at 12:27 PM
To: nmtinc@yahoo.com

Hi Nicole,

Pursuant to your request, attached hereto is a copy of Mary's Advance Health Care Directive listing you and your brothers as her primary Agents.

Paul

**1 File** │ 225.4kB

 **JosephMaryAHCD_01.pdf**
225kB

*Verified emails between Paul Raber and I to my personal email address.*

### Re: 7976 Aldea Circle Huntington Beach

nmtinc@yahoo.co.../Inbox

**Paul Raber** <psraberlaw@gmail.com>

To: Nicole Joseph <nmtinc@yahoo.com>

Cc: mikejoseph20@yahoo.com, tony@reddwire.com, currentxxvii@yahoo.com, nicolejoseph2005@yahoo.com, pmarano05 <pmarano05@yahoo.com>

Aug 8, 2017 at 4:28 PM

Hello Nicole, Mike and Tony,

It's not a bother at all.  There is no error that was made on the property affecting property taxes.

The only document that I prepared after your mother's passing was the Affidavit Death of Joint Tenant for the Aldea Circle property. When the Affidavit was recorded, it inadvertently recorded without the legal description attached to it.  As I mentioned when I was instructed to cease further work, the Affidavit just needs to be re-recorded with the legal description attached.  It's a simple matter.  Whether or not property taxes were paid, is a totally separate issue from the recording of the Affidavit.  If the property taxes were paid as you indicated, then you did the right thing by sending the county proof, and the county should correct that.

In a separate matter, the Claim For Reassessment Exclusion Form which was prepared and then signed by Mike and Tony also needs to be submitted to the Orange County Assessor.  At the time I was instructed to stop any further work, I returned that original signed form to the three of you, along with copies of my file, in the priority mail packet.  The Claim For Reassessment Exclusion Form is the form that needs to be submitted to the Orange County Assessor in order to keep your mother's prop 13 tax basis. Again, that has nothing to do with whether taxes were paid or not.

Copies of the (1) recorded Affidavit, (2) the legal description for Aldea Circle, and (3) the Claim For Reassessment Exclusion Form, are attached hereto for your reference.

Nicole, Mike and Tony, please feel free to contact me and I can discuss the Affidavit and Claim For Reassessment Exclusion Form further.

Paul

On Tue, Aug 8, 2017 at 2:50 PM, Nicole Joseph <nmtinc@yahoo.com> wrote:

Good Afternoon Paul,

Could you please help me understand what happened with 7976 Aldea Circle Huntington Beach Property? When Mike and I came to meet with you I recall asking for a reassessment on the properties? I'm not sure exactly what happened because you said there was an error made inadvertently regarding this property. Could you help me understand a little better? I'm totally sorry to bother you, I know you are busy. However, we received a notice stating property taxes had not been paid on this property and they had been. I sent the proof of payment. However , I want to make sure an errors that have been made regarding this property are corrected immediately.

Sincerely ,

Nicole Joseph

Sent from my iPhone

---

**3 Files**  |  547.7kB

 **Recorded Affidavit Death Of Joint Tenant_01.pdf**
323kB

 **Legal description For Aldea Circle Property_01.pdf**
72kB

**Claim For Reassessment Exclusion Form For Aldea Circle Property_01.pdf**
153kB

●●○○○ Verizon  LTE  [VPN]  11:26 AM  ↗ 27% ▭

‹ 42



1 (714) 743-0385

Mon, Jun 12, 12:07 PM

Thank you very much your help. If you could prepare a copy of your file and mail to 23272 laurel wood st lake forest Ca I would really appreciate that . It will help get a new attorney on track with everything

If you would like to talk around 3 should be a great time

Mostly just wanted to be available if you had any questions. We can always talk another time. I don't have much in the file since we hadn't gotten to do any trust Administration yet, but I can definitely give you guys copies of what I do have (mostly pertaining to the docs I did for your mom when she was alive). Feel free to let the new attorney know he/she can contact me and I'll gladly help. :)

I'll try to get the copies out to you before the end of the week. Then please Send me a text to let me know when you receive the envelope

    

SEE MJ DEPOSITION EX. "N"

**1 (714) 743-0385**

have it in 1 or 2 days.

Let me know when you receive it

Wonderful thank you so very much

And sorry for any trouble

Delivered

No trouble at all. Let your new attorney know that I'm available to answer any questions. As I mentioned, after your mom's passing, the only thing I did was the affidavit death of joint tenant and claim for reassessment exclusion form for the Huntington Beach property. Unfortunately, when that affidavit was recorded at the county recorder, it inadvertently didn't have the exhibit legal description attached. So, it just needs to be re-recorded. The letter accompanying the file explains that and includes the original affidavit. I apologize about that.  As I mentioned before, I'm grateful to have had the chance to meet your mom and help her, you and your brothers. All the best to the three of you.

iMessage



SEE MJ DEPO EX.N

I'll try to get the copies out to you before the end of the week. Then please Send me a text to let me know when you receive the envelope

Will do and thank you again!

You're welcome.

Wed, Jun 21, 3:07 PM

Hey Paul I sent out a certified copy of the notice I emailed you I am not sure you received it as of yet however I still have not received a copy of the file to give to the attorney who will be handling the Estate going forward. Do you know when you will be able to mail that out for me ?

Hi Nicole. Actually, it just went to the post office and is going out priority mail today. So you should have it in 1 or 2 days.

Let me know when you receive it

    

**Subject:**  Joseph Trust

**From:**  Nicole Joseph (nmtinc@yahoo.com)

**To:**  psraberlaw@gmail.com;

**Cc:**  currentxxvii@yahoo.com;

**Date:**  Wednesday, June 21, 2017 3:12 PM

Paul,

Hi hope all is well! I sent out a certified copy of the notice I emailed you, I am not sure you received it as of yet? However, I still have not received a copy of the file to give to the attorney who will be handling the Estate going forward. Do you know when you will be able to mail that out for me ?

Nicole Joseph

Sent from my iPhone

**Paul S. Raber**

*ATTORNEY AT LAW*
*115 S. Chaparral Court #100*
*Anaheim, CA 92808*
*Telephone: (714) 521-0611*
*Psraberlaw@gmail.com*

June 21, 2017



Nicole Joseph
Michael Joseph
Anthony Joseph
23272 Laurel Wood Street
Lake Forest, CA 92630

Dear Nicole, Michael & Anthony:

Pursuant to your instruction on June 12,2017, I have closed my file. Enclosed herewith are copies of my file. There is not much in it since the only thing I prepared, after your mom's passing, was the Affidavit-Death Of Joint Tenant and corresponding Claim For Reassessment Exclusion For Transfer Between Parent And Child pertaining to 7976 Aldea Circle, Huntington Beach. We didn't do any trust administration matters pertaining to those assets in your mom's trust.

The Affidavit-Death Of Joint Tenant and Claim For Reassessment Exclusion are originals (except for the Preliminary Change of Ownership Report form attached to the affidavit which is a copy). Please note that the Affidavit, when it was recorded by the County, inadvertently did not include the legal description Exhibit attached to it. As such, it needs to be re-recorded with the legal description attached. That 2 page legal description exhibit can be found in the 2011 deed for 7976 Aldea Circle also enclosed herewith. As I have been instructed to cease further work, please advise your new attorney of the need to do that and your attorney can contact me with any questions.

In regards to the Claim For Reassessment Exclusion, the Recorder's Document Number for the Affidavit (or re-recorded Affidavit) needs to be noted on the first page of the Claim For Reassessment Exclusion form and then said form needs to be submitted to the Orange County Assessor's Office. Here again, your new attorney is welcome to contact me with any questions. I am thankful for the opportunity to have met your mom and to have helped her, as well as, the three of you. I wish you all the very best in the future.

Very Truly Yours,

Paul S. Raber
Attorney at Law

PSR/mmi
Enclosures as noted above

DEF 0029

EXHIBIT "D"

**MAKAREM & ASSOCIATES aplc**
Ronald W. Makarem, Esq. (SB#180442)
Jared Walder, Esq. (SB#243569)
Jared V. Walder, Esq. (SB# 310687)
11601 Wilshire Boulevard, Suite 2440
Los Angeles, California 90025-1760
Phone: (310) 312-0299; Fax: (310) 312-0296

Attorneys for Plaintiff NICOLE JOSEPH

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF ORANGE

| | |
|---|---|
| NICOLE JOSEPH, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>PAUL S. RABER, an individual; LAW OFFICES OF PAUL S. RABER, a California entity; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 30-2018-01021312-CU-PN-CJC<br><br>Hon. Walter Schwarm<br>Dept. C-19<br><br>*Complaint Filed: September 25, 2018*<br>*Trial Date: Nov. 22, 2019*<br><br>**PLAINTIFF NICOLE JOSEPH'S REPONSES TO DEFENDANT'S REQUEST FOR ADMISSION, SET ONE** |

PROPOUNDING PARTY:  Defendants
RESPONDING PARTY:    Plaintiff NICOLE JOSEPH
SET NO.:             One

## GENERAL OBSERVATIONS AND OBJECTIONS

A.      These responses and objections are made solely for the purposes of this action.  Each response is subject to all objections as to competence, relevance, materiality, propriety, admissibility, and all other objections and grounds that would require the exclusion of any statement herein, if any Response was asked of respondent, or if any statement contained herein was made by a witness present and testifying in court, all of which objections and grounds are expressly reserved and interposed at the time of trial.

B.      While these responses are based on diligent exploration and investigation by plaintiff and his counsel, they reflect the current state of plaintiff's knowledge respecting the matters about which inquiry is made. Plaintiff is presently in the process of conducting discovery, formal and informal, in this action, and has not concluded such discovery.  Accordingly, Plaintiff has not been able to ascertain all relevant facts herein, and these responses are not intended to be final and/or conclusive.  The information contained herein remains preliminary, and, in making these responses Plaintiff reserves the right to amend, supplement, delete from, alter, modify, or otherwise change any

response herein, as further discovery may make appropriate when Plaintiff has ascertained all relevant facts, or in the event of error, inadvertent mistake or omission.  In making these responses Plaintiff fully reserves the right to introduce at trial any and all information subsequently discovered and all information from documents heretofore or hereafter produced by any of the parties in this action, or by any third person, which support or tend to support Plaintiff's contentions at the time of trial, or in support or opposition to any motion in this matter.  The information hereinafter set forth is true and correct to the best knowledge of responding party(ies) at this particular time, and is subject to correction for inadvertent errors or omissions, if any error(s) or omission(s) shall be found to exist.  To the extent that Plaintiff herein identifies certain information or documents, or delineates facts or otherwise, Plaintiff does so without prejudice to establish at a later date any additional facts which may be contained within, or discovered as a result of, or subsequent to these responses, or as a result of any additional investigation or discovery.

C.    The responses below are based on information presently available to Plaintiff, and no incidental or implied admissions are intended hereby.

D.    If for any reason whatsoever the propounding party challenges the adequacy and/or sufficiency of these responses or the basis of registered objections, this responding party demands a formal meet and confer pursuant to Rule 339 of the California Rules of Court.

E.    The fact that responding party has answered or objected to any request or part thereof should not be taken as an admission that responding party accepts or admits the existence of any facts set forth or assumed by such request or that such answer or objection constitutes admissible evidence.  The fact that responding party has answered all of any request is not intended and shall not be construed to be a waiver by responding party of all or any objections to any request made by propounding party.

F.    Responding party assumes that none of propounding party's requests call for information protected by either the attorney-client privilege or the attorney work-product doctrine.  Responding party objects to each of the propounding party's requests, if any, which seek information protected by the attorney-client privilege or work-product doctrine.  Without waiving the assertion of these privileges, responding party has provided these answers on the assumption that they refer only to unprivileged facts, information and documents.

The foregoing observations and objections are incorporated by this reference into each and all of the following responses to which they are applicable, as though fully set forth therein.  Without in any way waiving, and as limited by, the foregoing observations and objections, plaintiff responds as follows:

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**
Admit that the WILL attached hereto as Exhibit "A" is genuine.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**
Admit only that Exhibit A appears to be an authentic copy of the will executed April 11, 2005.

**REQUEST FOR ADMISSION NO. 2:**
Admit that the TRUST attached hereto as Exhibit "B" is genuine.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**
Admit only that Exhibit B appears to be an authentic copy of the trust executed April 11, 2005.

**REQUEST FOR ADMISSION NO. 3:**

Admit that YOU attended the September 12, 2016, meeting with RABER and YOUR MOTHER regarding YOUR MOTHER'S intended changes to her TRUST.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Objection. This request is vague and ambiguous with respect to the term "intended changes," and is compound.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Deny.

**REQUEST FOR ADMISSION NO. 4:**

Admit that it was YOUR MOTHER'S intention to exclude YOU as a co-trustee from her TRUST.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Objection. This request is vague as to time, calls for a legal conclusion, and calls for speculation.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: deny.

**REQUEST FOR ADMISSION NO. 5:**

Admit that YOU discovered that it was YOUR MOTHER'S intention to exclude YOU as a co-trustee from her TRUST on September 12, 2016.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Deny.

**REQUEST FOR ADMISSION NO. 6:**

Admit that YOU knew it was YOUR MOTHER'S intention to exclude YOU as a co-trustee from her TRUST.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Objection. This request is vague as to time and calls for a legal conclusion.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: deny.

**REQUEST FOR ADMISSION NO. 7:**

Admit that YOUR MOTHER'S intention to exclude YOU as a co-trustee from her TRUST was discussed at this September 12, 2016, meeting between YOU, RABER, and YOUR MOTHER.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Objection. This request is vague, calls for speculation, and is compound.

Subject to and without waiving the foregoing objections Plaintiff responds as follows: deny.

**REQUEST FOR ADMISSION NO. 8:**

Admit that YOU knew the terms of the WILL before the September 12, 2016 meeting with YOU, RABER, and YOUR MOTHER.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Objection. This request is vague as to the term "knew" and is on that basis incapable of being answered as phrased.

**REQUEST FOR ADMISSION NO. 9:**

Admit that YOU knew the terms of the TRUST before the September 12, 2016 meeting with YOU, RABER, and YOUR MOTHER..

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Objection. This request is vague as to the term "knew" and is on that basis incapable of being answered as phrased.

**REQUEST FOR ADMISSION NO. 10:**

Admit that the FIRST AMENDMENT, attached hereto as Exhibit "C" is genuine.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Admit only that Exhibit C appears to be an authentic copy of the amendment executed

October 31, 2016.

**REQUEST FOR ADMISSION NO. 11:**

Admit that RABER drafted the FIRST AMENDMENT to the TRUST following the September 12, 2016, meeting with YOU, RABER, and YOUR MOTHER.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Objection. This request is vague as to time and ambiguous as to the term "following." it is also compound and assume facts not in evidence.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows. Admit only that the First Amendment was executed on October 31, 2016, which is after September 12, 2016. Plaintiff denies this request to the extent it implies or suggests the First Amendment was drafted as a result of the non-existent September 2016 meeting.

**REQUEST FOR ADMISSION NO. 12:**

Admit that RABER drafted the FIRST AMENDMENT to the TRUST to mirror YOUR MOTHER'S intentions to exclude YOU as a co-trustee.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Objection. This request is vague as to the term "mirror, compound, and it calls for speculation.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: deny.

**REQUEST FOR ADMISSION NO. 13:**

Admit that YOUR MOTHER did not intend for YOU to be a co-trustee of the FIRST AMENDMENT.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Objection. This request is unintelligible based on Defendant's definitions and cannot be answered as presently phrased.

**REQUEST FOR ADMISSION NO. 14:**

Admit that YOUR MOTHER'S intentions are reflected in the FIRST AMENDMENT.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Objection. This request is vague, ambiguous, and overbroad as to the term "intentions are reflected" such that it cannot be answered as presently phrased.

**REQUEST FOR ADMISSION NO. 15:**

Admit that on June 12, 2017, YOU sent YOUR JUNE 2017 EMAIL to RABER stating that RABER recuse himself as counsel for YOU, on behalf of YOUR MOTHER.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Objection. This request is vague, ambiguous, compound, and unintelligible as phrased such that it cannot be answered as presently phrased.

**REQUEST FOR ADMISSION NO. 16:**

Admit that in YOUR JUNE 2017 EMAIL to RABER it was YOUR intention that RABER no longer represent YOU, on behalf of YOUR MOTHER in relation to her ESTATE.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Objection. This request is vague, ambiguous, compound, and unintelligible as phrased such that it cannot be answered as presently phrased.

**REQUEST FOR ADMISSION NO. 17:**

Admit that on June 21, 2017, RABER returned YOUR client file in response to YOUR JUNE 2017 EMAIL.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Objection. This request is vague and ambiguous as to the term "YOUR client file" and it calls for speculation such that it cannot be answered as presently phrased.

**REQUEST FOR ADMISSION NO. 18:**

Admit that on or after June 21, 2017, RABER no longer performed any legal services for YOU, on behalf of YOUR MOTHER.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Objection. This request calls for a legal conclusion and is vague and ambiguous as presently phrased.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: deny.

**REQUEST FOR ADMISSION NO. 19:**

Admit that on or after June 21, 2017, YOU sought other counsel to perform legal services for YOU, on behalf of YOUR MOTHER.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Objection. This request calls for a legal conclusion, is vague and ambiguous as presently phrased, and seeks information that may be protected by the attorney-client privilege.

**REQUEST FOR ADMISSION NO. 20:**

Admit that on or after June 21, 2017, YOU retained other counsel to perform legal services for YOU, on behalf of YOUR MOTHER.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Objection. This request calls for a legal conclusion, is overbroad, and is ambiguous as to the term "on behalf of YOUR MOTHER."

Subject to and without waiving the foregoing objections, Plaintiff responds as follows. Plaintiff admits only that after June 21, 2017, she retained counsel to perform legal services. Plaintiff denies anything else that may be implied from this poorly worded and somewhat unintelligible request.

**REQUEST FOR ADMISSION NO. 21:**

Admit that YOUR JUNE 2017 EMAIL attached hereto as Exhibit "D" is genuine.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

Objection. This request calls for speculation.

Subject to and without waiving the foregoing objection, Plaintiff responds as follows. Plaintiff is unable to admit or deny the genuineness of Exhibit D, which appears to be an email pulled from Raber's Gmail account, to which Plaintiff does not have access.

Dated:  March 15, 2019                    **MAKAREM & ASSOCIATES, aplc**

By: _____

JARED WALDER

Attorney for Plaintiff

EXHIBIT "E"

**KOSNETT LAW FIRM**
**JAMES VICTOR KOSNETT**
11355 WEST OLYMPIC BOULEVARD
Suite 300
LOS ANGELES, CALIFORNIA 90064
www.educationlawyer.org

Telephone: (310) 445-5900
Facsimile: (424) 238-2257

jameskosnett@kosnettlaw.com
louiskosnett@kosnettlaw.com

July 10, 217

<u>**VIA EMAIL (Mikejoseph20@yahoo.com) AND US MAIL**</u>

Michael Joseph
23272 Laurel Wood St
Lake Forest CA 92630

Re: Nicole Joseph

Dear Mr. Joseph:

We represent your sister Nicole Joseph with respect to, among other things, her interest as a beneficiary of the Joseph Family Trust.

We understand that you are the current trustee. Please confirm and send us a copy of the trust instrument, and a list of the trust assets. We would also appreciate an accounting of the income and expenditures, and a copy of the tax returns for the last two years.

We are also interested in knowing whether the trust is holding shares of a corporation known as NMT, Inc., and any information you may have about said corporation.

Thank you for your courtesy and cooperation.

Sincerely,

KOSNETT LAW FIRM

JAMES VICTOR KOSNETT

### KOSNETT LAW FIRM
**JAMES VICTOR KOSNETT**
11355 WEST OLYMPIC BOULEVARD
Suite 300
LOS ANGELES, CALIFORNIA 90064
www.educationlawyer.org

Telephone:  (310) 445-5900
Facsimile:  (424) 238-2257

jameskosnett@kosnettlaw.com
louiskosnett@kosnettlaw.com

July 12, 217

**<u>VIA EMAIL (Tony@reddwire.com ) AND US MAIL</u>**

Anthony Joseph
23272 Laurel Wood St
Lake Forest CA 92630

Re: Nicole Joseph

Dear Mr. Joseph:

We represent your sister Nicole Joseph with respect to, among other things, her interest as a beneficiary of the Joseph Family Trust.

We understand that you are another beneficiary. We would appreciate your providing us with copies of any trust correspondence, distributions, list of holdings, tax returns, etc., which you may have, and otherwise contacting us to discuss the trust

We are also interested in knowing whether the trust is holding shares of a corporation known as NMT, Inc., to your knowledge, and any information you may have about said corporation, and an LLC known as Summerfield Investments, LLC.

Thank you for your courtesy and cooperation.

Sincerely,

**KOSNETT LAW FIRM**

**JAMES VICTOR KOSNETT**

# SECTION 8

## TRUST NOTIFICATION PROVISIONS

California Probate Code Sections 16060-16064 states the Successor Trustee's (i.e., other than the Settlor/Trustee) duty to report information and to account to current beneficiaries of your Trust. Note that a settlor is a person that created a trust and is also known as the Trustee.

Probate Code Sections 16060-16064 were amended by the California Legislature effective January 1998 to specify that the Trustee "shall provide a true and complete copy of the terms" of any trust or portion thereof that becomes irrevocable "because of the death of one or more of the settlers of the trust or for any other reason" to "any beneficiary of the trust who requests it and to any heir of a deceased settlor who requests it."

Section 16061.7 adds that such notification is also required within 60 days when there is a change of trustees of an irrevocable trust, and that such notice shall be sent to each beneficiary and each heir of a deceased settlor (where the heir is known and can be contacted).

It is also important to be aware of possible penalties for failure to adhere to Section 16061.9 (a) and 16061.9 (b):

(a)    A trustee who fails to serve the notification by trustee as required by Section 16061.7 on a beneficiary shall be responsible for all damages, attorney's fees, and costs caused by the failure unless the trustee makes a reasonably diligent effort to comply with that section.

(b)    A trustee who fails to serve the notification by trustee as required by Section 16061.7 on an heir who is not a beneficiary and whose identity is known to the trustee shall be responsible for all damages caused to the heir by the failure unless the trustee shows that the trustee made a reasonably diligent effort to comply with that section. For purposes of this subdivision, "reasonably diligent effort" means that the trustee has sent notice by first-class mail to the heir at the heir's last mailing address actually known to the trustee.

You should consult me or other legal counsel if you have any questions regarding this required notification provision.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# DECLARATION OF TRUST

This Declaration of Trust is made by the undersigned as of the date set forth in Article 1.

## ARTICLE 1

## NAMES, APPOINTMENTS and PROPERTY OF TRUST

1.1    NAME: This Trust shall be known as:

"The JOSEPH TRUST dated April 11, 2005."

1.2    TRUSTOR/SETTLOR:

MARY M. JOSEPH shall be the Trustor of this trust.

1.3    TRUSTEE(S): Trustor appoint the following as Trustee(s) of this trust:

First Appointment:  MARY M. JOSEPH, as Trustee.

Second Appointment:  NICOLE JOSEPH, MICHAEL JOSEPH and ANTHONY
JOSEPH, my children as Co- Trustees.

Third Appointment:  No others.

MARY M. JOSEPH shall serve as the first appointed trustee. If MARY M.
JOSEPH fails to qualify or ceases to act, then the next successor appointee's
shall serve in the order appointed.  Except as otherwise provided in Article 4,
where Trustor has appointed co-trustees, all co-trustees shall act together. Upon
the failure of one of the co-trustees to qualify, or upon his or her cessation of
acting, the remaining joint appointee(s) shall serve as trustee or trustees.

1.4    BENEFICIARIES: Trustor shall be the initial beneficiary of this trust. Successor
beneficiaries are those persons designated in Article 2.

EXHIBIT "F"

#B.3

Find messages, documents, photos or people          Nicole          Home

Compose          ← Back   ⟵   ⟪   ⟶          📥 Archive    📁 Move    🗑 Delete    ⊘ Spam   •••          ✕

nmtinc@...   999+
currentxxvii   999+          N.M.T.Inc, Entity Number C3589871                                    Yahoo/Inbox
nicolejosep...   245

                          EM   **Maxwell, Edward** <Edward.Maxwell@sos.ca.gov>              May 2, 2017 at 2:30 PM
                               To: nmtinc@yahoo.com
Inbox        999+
Unread                    Dear Ms. Joseph:
Starred
Drafts        391         Thank you for contacting us about a terminated entity on our records named N.M.T.Inc, entity number C3589871.
Sent
                          Our records reflect that the business entity was terminated on our records with the filing of a Certificate of Dissolution on
Archive                   December 7, 2016.  I have attached a copy of the filing for your information.
Spam
Trash                     To reinstate a terminated business entity to active status on our records, an order of reinstatement from a California
Less                      court must be obtained and a certified copy of the order of reinstatement must be presented to our office for filing as
                          provided in Government Code sections 12260 through 12263.

Views         Hide        Even if the business entity may have been terminated wrongfully, there is no provision in the California Corporations
  🖼 Photos                Code to revoke a termination filing and our office cannot unilaterally revoke a termination filing, whether by allowing
                          additional filings by the entity, or to administratively "undo" a particular filing upon the demand of an interested party.
  📄 Documents             (See generally Catalina Investments, Inc. v. Jones (2001) 98 Cal.App.4th 1; California Government Code section
  ✈ Travel                 6200.)
  📓 Tutorials
                          Nevertheless, a business entity, or other interested party, can go to court and make a factual showing that the entity
Folders       Hide        was wrongfully terminated and obtain a court-ordered reinstatement as permitted by California Government Code
                          sections 12260 through 12263, which are statutes enacted through legislation sponsored by our office in 2006 to assist
+ New Folder              those business entities in such a situation.  You should not name the Secretary of State as a party to the proceeding.
  brittain law            Obtaining an order of reinstatement is similar to the court process to obtain an order dissolving a corporation as
                          provided in Corporations Code section 1800 et seq. and presenting the certified copy of the order to the Secretary of
  brooke do...   6        State for filing as provided in Corporations Code sections 1808 and 1809, however, the order reinstating a business
  Deleted it...           entity may be obtained through a petition or civil lawsuit.
  Drafts        1
  duke energy   28        Government Code section 12261 states:
  enterprize...   3       "12261. (a) The Secretary of State shall reinstate to active status on its records, a business entity for which a court finds
  fraud        287        any of the following:
                          (1) The factual representations by a shareholder, member, partner, or other person that are contained in the termination
  john stetter   8        document are materially false.
  Junk E-mail   999+      (2) The submission of the termination document to the Secretary of State for filing is fraudulent.
  mercahnt...   739       (b) If a court of competent jurisdiction orders reinstatement of a business entity to active status on any of the grounds
  mom          71         stated in paragraph (1) or (2) of subdivision (a), the order for reinstatement shall state all of the following:
                          (1) The specific grounds for reinstatement.
  nation wide   1         (2) That if there is a conflict with the entity name under subdivision (b) of Section 201, subdivision (b) of Section 5122,
  Notes                   subdivision (c) of Section 7122, subdivision (b) of Section 9122, subdivision (b) of Section 12302, subdivision (d) of
  OIB Busine...   31      Section 15901.08, subdivision (b) of Section 17701.08 of the Corporations Code, or related statutes, the reinstatement
  OIB Entert...   27      shall be conditioned upon the business entity concurrently submitting for filing an amendment to change its name to
                          eliminate the conflict along with the certified copy of the order required by Section 12263.
  OIB Finance   55        (3) That the business entity shall be reinstated effective from the date of the filing of the court order with the Secretary of
  OIB Home     484        State.
  OIB News     999+       (c) The court order for reinstatement may be obtained by submitting a petition to the superior court containing the legal
  OIB Shopp...   999+     and factual basis for reinstatement or as part of a civil action for damages or equitable relief. The Secretary of State
                          shall not be made a party to the proceeding."
  OIB Social...   908
  OIB Travel   542        Government Code section 12263 states:
  policee       36
  reports                 "12263. Nothing in this article authorizes a court to order that any records of the Secretary of State be expunged. The
                          Secretary of State shall file a certified copy of the order of the court reinstating the business entity with the records of
                          the business entity, and the reinstatement shall be effective on the date the Secretary of State files the order. The
                          Secretary of State shall notify the Franchise Tax Board of the reinstatement of the business entity."

                          If you choose to obtain the order of reinstatement, you may submit an originally certified copy of the order by the clerk of
                          the court to my attention, Business Programs Division, 1500 11th Street, Third Floor, Sacramento, California 95814, for
                          filing as required by California Government Code section 12263.  Pursuant to California Government Code section
                          12263, the reinstatement is effective upon filing a certified copy of the court order with our office.  Also, please note if
                          you choose to obtain a court order reinstating the entity and a name conflict exists at the time of submitting the certified
                          copy of the order of reinstatement, a name-change amendment along with a $30 filing fee must be submitted or the
                          active business entity with the conflicting name would need to change their name prior to reinstatement.  (California
                          Government Code section 12262.)

                          Please be aware that the necessary originally certified copy of the court order is different than an endorsed-filed copy of
                          the order or a plain copy of the signed order and has the clerk's certification that the order is a true and correct copy of
                          what is on file with the court. (See Evidence Code section 1531 and Government Code section 70626(a)(4).)

                          For your information, I have attached a sample draft order that can be used along with the necessary court pleadings to
                          create an order that complies with the current version of Government Code section 12261 and can be tailored to the
                          evidence and facts as presented to the court for your particular situation in a petition to the superior court containing the
                          legal and factual basis for reinstatement or as part of a civil action for damages or equitable relief.  The sample
                          language is an example only and should not be considered as the only acceptable language that can be used to comply
                          with applicable law.  For your additional reference, I also have attached copies of some court orders that were filed in
                          2015 relating to the reinstatement of corporations and court orders filed in 2016 relating to the reinstatement of limited
                          liability companies.  Copies of the complete set of pleadings used to obtain the required order can be viewed in person
                          or may be available for viewing online for a fee through the Superior Court's website.

                          Information for all California Superior Courts is available from the California Judicial Branch's website at the following

1  Nicole Ida Joseph
   23272 Laurel Wood St
2  Lake Forest, California 92630
   Home: 949-770-5453
3  Cell: 704-591-8985
   NMTinc@yahoo.com
4  NicoleJoseph2005@yahoo.com
   In Pro Per
5
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
6
                              COUNTY OF ORANGE
7
   N.M.T Inc. a California Corporation          Case No.:
8
                 Petitioner
9
                                               PROPOSED ORDER REINSTATING N.M.T INC
10                                             PETIONER TO ACTIVE STATUS WITH
                                               CALIFORNIA SECRETARY OF STATE
11                                             {CALIFORNIA GOVERNMENT CODE 12261}
12
13
14  The Petitioner(s) Nicole Ida Joseph, Michael Moses Joseph, and Anthony Robert Joseph plead that the
15  Superior Court of California read and consider the following verified request for order reinstating N.M.T Inc
16  {c3589871} to active status. Petitioner(s) pleads that the court finds the declarations and documents
17  submitted in support of Petitioner(s) motion for reinstatement to be true and accurate.
18
                          Dated this 23rd day of May 2017
19
20
21
22
23             1. N.M.T Inc California Secretary of state business entity c3589871 was formed and
24  registered with the California Secretary of State.
25  PROPOSED ORDER REINSTATING N.M.T INC PETIONER TO ACTIVE STATUS WITH CALIFORNIA
    SECRETARY OF STATE
    {CALIFORNIA GOVERNMENT CODE 12261} - 1

2. On December 7, 2016 a certificate of dissolution/cancellation/surrender was submitted to the California Secretary of State purportedly on behalf of N.M.T Inc entity number c3589871.

3. Since the certificate of dissolution/cancellation/surrender appeared true and correct as to both form and content the Secretary of State filed the document.

4. However, based on declaration(s) made by Nicole Joseph, Anthony Joseph and Michael Joseph heirs to the deceased and sole director of N.M.T Inc Mrs. Mary Joseph state that she did not approve actions to terminate and did not approve actions to submit or cause to be submitted the certificate of dissolution/surrender/ cancellation.

5. The factual representations made by Mary Joseph director of N.M.T Inc c3589871 contained in the termination document filed with the Secretary of State on December 7, 2016 are materially false.

6. The submission of the termination document to the Secretary of State for filing was fraudulent.

7. At the time of dissolution Mrs. Mary Joseph was in the hospital suffering with cancer. Mrs. Joseph was the sole director of N.M.T Inc which was incorporated for approx. 22 years prior to December 7, 2016. At the time the certificate of cancellation was submitted, Mary Joseph nor anyone acting on behalf of Mary Joseph had the authority to file the dissolution, it had not been and was not intended to be dissolved. Nicole, Michael and Anthony Joseph, the only living children and the only successors to the estate of Mary Joseph declare that the certificate of dissolution was fraudulent.

PROPOSED ORDER REINSTATING N.M.T INC PETIONER TO ACTIVE STATUS WITH CALIFORNIA SECRETARY OF STATE
{CALIFORNIA GOVERNMENT CODE 12261} - 2

8. Accordingly, statements made in the certificate of dissolution were materially false including but not limited to (i) The Cooperation has been completely wound and dissolved (ii) The final return required by the California Revenue and taxation code have been filed.

9. The debts and liabilities of N.M.T Inc have not been actually paid and the remaining assets of N.M.T Inc had not been distributed to the persons entitled thereto at the time of filing the certificate of dissolution. Unless N.M.T Inc is reinstated to active by the Secretary of State, the estate of Mary Joseph and the Petitioner(s) on behalf of N.M.T Inc could suffer great harm.

### *Corporation code 1905 (b)*

10. Pursuant to **Government Code 12260-12263** the Petitioner is entitled to be reinstated to active status on the grounds that the factual representations in the certificate of dissolution were materially false.

11. The petitioner asks that if there is a conflict with the entity name under *subdivisions (b) of 201, subdivision (b) of section 512, subdivision (c) of section 7122, subdivision (b) of section 9122, subdivision (b) of section 12302, subdivision (d) of section 15901.8* and *subdivision (b) of section 17701.08* of the *Corporation's code*, or related statutes, that the reinstatement shall be conditioned upon the business entity concurrently submitting for an amendment to change its name to eliminate the conflict along with the certified copy of the order required by *section 12263*.

12. *Corporation code 19001 (b)* Requires that the dissolution of a corporation be signed by a shareholder, officer, director or authorized representative. Since Mary Joseph, sole director of N.M.T

PROPOSED ORDER REINSTATING N.M.T INC PETIONER TO ACTIVE STATUS WITH CALIFORNIA SECRETARY OF STATE
{CALIFORNIA GOVERNMENT CODE 12261} - 3

1  Inc did not sign or appoint anyone as a representative on her behalf to sign the dissolution of corporation

2  the petitioner is entitled to the order set forth pursuant to **_Government code 12261_** The factual

3  
4  representations filed on December 7, 2017 were false and not executed by the shareholder, officer, or other

5  authorized representative. Having made the forgoing findings and good cause appearing, it is requested

6  that the court order N.M.T Inc back to active status.

7          13. Additionally, or in the alternative, other grounds exist warranting the petitioner(s)

8  reinstatement of N.M.T Inc.

9  
10          14. The Petitioner asks that the court grant reinstatement effective from the date of filing

11  the court order with the Secretary of State and that the Secretary of State shall notify the Franchise Tax

12  Board upon reinstatement.

13

14

15

16

17

18

19

20

21

22

23

24

25  PROPOSED ORDER REINSTATING N.M.T INC PETIONER TO ACTIVE STATUS WITH CALIFORNIA
SECRETARY OF STATE
{CALIFORNIA GOVERNMENT CODE 12261} - 4

8. Accordingly, statements made in the certificate of dissolution were materially false including but not limited to (i) The Cooperation has been completely wound and dissolved (ii) The final return required by the California Revenue and taxation code have been filed.

9. The debts and liabilities of N.M.T Inc have not been actually paid and the remaining assets of N.M.T Inc had not been distributed to the persons entitled thereto at the time of filing the certificate of dissolution. Unless N.M.T Inc is reinstated to active by the Secretary of State, the estate of Mary Joseph and the Petitioner(s) on behalf of N.M.T Inc could suffer great harm.

### *Corporation code 1905 (b)*

10. Pursuant to ***Government Code 12260-12263*** the Petitioner is entitled to be reinstated to active status on the grounds that the factual representations in the certificate of dissolution were materially false.

11. The petitioner asks that if there is a conflict with the entity name under ***subdivisions (b) of 201, subdivision (b) of section 512, subdivision (c) of section 7122, subdivision (b) of section 9122, subdivision (b) of section 12302, subdivision (d) of section 15901.8*** and ***subdivision (b) of section 17701.08*** of the ***Corporation's code***, or related statutes, that the reinstatement shall be conditioned upon the business entity concurrently submitting for an amendment to change its name to eliminate the conflict along with the certified copy of the order required by ***section 12263***.


12. ***Corporation code 19001 (b)*** Requires that the dissolution of a corporation be signed by a shareholder, officer, director or authorized representative. Since Mary Joseph, sole director of N.M.T Inc did not sign or appoint anyone as a representative on her behalf to sign the dissolution of corporation the petitioner is entitled to the order set forth pursuant to ***Government code 12261*** The factual representations filed on December 7, 2017 were false and not executed by the shareholder, officer, or other authorized representative. Having made the forgoing findings and good cause appearing, it is requested that the court order N.M.T Inc back to active status. Please verify and compared signatures on the dissolution certificate with documentation that has been attached and submitted.

13. Additionally, or in the alternative, other grounds exist warranting the petitioner(s) reinstatement of N.M.T Inc.

14. The Petitioner asks that the court grant reinstatement effective from the date of filing the court order with the Secretary of State and that the Secretary of State shall notify the Franchise Tax Board upon reinstatement.

**Please see that the tax preparation forms and day of death on death cert

Sincerely,

Nicole Joseph

**Secretary of State**
**Certificate of Dissolution**
(California Stock Corporation ONLY)

DISS STK

D1373491

**FILED**
Secretary of State
State of California

**DEC 07 2016**

This Space For Office Use Only

**IMPORTANT — Read Instructions before completing this form.**

There is **No Fee** for filing a Certificate of Dissolution - Stock

**Copy Fees –** First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

| 1. **Corporate Name** (Enter the exact name of the Corporation as it is recorded with the California Secretary of State.) | 2. **7-Digit Secretary of State File Number** |
|---|---|
| N.M.T. Inc | c3589871 |

**3. Election**

☑ The dissolution was made by a vote of **ALL** of the shareholders of the California corporation.

**Note**: If the above box is not checked, a **Certificate of Election to Wind Up and Dissolve** (Form ELEC STK) must be filed prior to or together with this Certificate of Dissolution. (California Corporations Code section 1901.)

**4. Debts and Liabilities** (Check the applicable statement. Only **one box** may be checked. If second box is checked, must include the required information in an attachment.)

☐ The known debts and liabilities have been actually paid or paid as far as its assets permitted.

☐ The known debts and liabilities have been adequately provided for in full or as far as its assets permitted by their assumption. Included in the **attachment** to this certificate, incorporated herein by this reference, is a description of the provisions made and the name and address of the person, corporation or government agency that has assumed or guaranteed the payment, or the depository institution with which deposit has been made.

☑ The corporation never incurred any known debts or liabilities.

**5. Required Statements** (Do not alter the Required Statements – **ALL** must be true to file Form DISS STK.)

a. The Corporation has been completely wound up and is dissolved.
b. All final returns required under the California Revenue and Taxation Code have been or will be filed with the California Franchise Tax Board.
c. The known assets have been distributed to the persons entitled thereto or the corporation acquired no known assets.

**6. Read, Verify, Date and Sign Below** (See Instructions for signature requirements.)

The undersigned is the sole director or a majority of the directors now in office. I declare under penalty of perjury under the laws of the State of California that the matters set forth in this certificate are true and correct of my own knowledge.

| Date | Signature | Type or Print Name |
|---|---|---|
| 12-1-16 | | MARY JOSEPH |
| | | |
| Date | Signature | Type or Print Name |
| | | |
| Date | Signature | Type or Print Name |

DISS STK (REV 12/2016)

2016 California Secretary of State
www.sos.ca.gov/business/be

# FIRST AMENDMENT TO THE JOSEPH TRUST

# DATED APRIL 11, 2005

DECLARATION RE: INCORPORATION OF ENTIRE TRUST DOCUMENT

BY REFERENCE AND FIRST AMENDMENT TO TRUST

Declaration. Mary M. Joseph, Trustee and Trustor (a.k.a. Settlor) of The JOSEPH

TRUST Dated April 11, 2005, does hereby incorporate by reference said Trust document in its

entirety, and; does hereby amend said Trust as set forth herein below:

1.3    Amendment To The JOSEPH TRUST Dated April 11, 2005, Article 1, Paragraph 1.3.,

Entitled "TRUSTEE(S)." Article 1, Paragraph 1.3., entitled "TRUSTEE(S)", shall be

amended in its entirety and shall now read as follows:

"1.3    TRUSTEE(S): Trustor appoints Mary M. Joseph as the initial Trustee. On the

death of the initial trustee, or if, for any reason the initial trustee ceases to act as

trustee, then the settlors' sons, Michael Joseph and Anthony Joseph, shall be first

successor co-trustees. If for any reason either Michael Joseph or Anthony Joseph

fails or ceases to act as first successor trustee, then the other shall serve as sole

first successor trustee. If for any reason both Michael Joseph and Anthony Joseph

fail or cease to act as first successor trustee, then said first successor trustees shall

be authorized to designate a successor trustee. If for any reason said first

successor trustees fail to designate a successor trustee, the court may appoint a

successor trustee. The determination of whether a trustee is mentally

incapacitated shall be made in writing by a licensed physician and no licensed

1

physician who executes a medical opinion of incapacity shall be subject to liability because of such execution."

2.4    Amendment To The JOSEPH TRUST Dated April 11, 2005, Article 2, Paragraph 2.4., Entitled "DISTRIBUTION OF THE TRUST ESTATE."  Article 2, Paragraph 2.4., entitled "DISTRIBUTION OF THE TRUST ESTATE", shall be amended in its entirety and shall now read as follows:

"2.4    DISTRIBUTION OF THE TRUST ESTATE.  On the death of the settlor, the trustee shall hold, administer, and distribute the assets of the Trust, as follows:

(A)    The trustee shall divide the trust property (including all income then accrued but uncollected and all income then remaining in the hand of the trustee) based on fair market value at the time of said division of trust property, into shares as set forth herein below and, thereafter, the trustee shall distribute all of those shares outright and immediate, as follows: (1) 50% to the settlor's son, Michael Joseph, and; (2) 50% to the settlor's son, Anthony Joseph.

(B)    In the event that either Michael Joseph or Anthony Joseph predeceases the settlor, then the trust property shall be distributed outright, immediate and entirely to the other surviving son of the settlor, to wit, either Michael Joseph of Anthony Joseph.

(C)    In the event that both Michael Joseph and Anthony Joseph predecease the settlor, the trustee shall distribute the trust property outright, immediate and as follows:

(1)    1/3rd equally among the then-surviving issue of Michael Joseph, by right of representation.  However, if any of such individual issue have not reached the age of 21 years at the death of the settlor, the trustee shall continue to hold, administer, and distribute that issue's share in a separate trust for that issue according to the terms set forth in subsection 5.4 herein below entitled Separate Share Trust For Issue Of Then-Deceased Child.  In the event that there are no then-living issue of Michael Joseph, then the trustee shall distribute said 1/3rd share of the trust property immediately and equally between, and pursuant to, subsections 2.4(C)(2)&(3) herein below.

(2)     1/3rd equally among the then-surviving issue of Anthony Joseph,
        by right of representation. However, if any of such individual issue
        have not reached the age of 21 years at the death of the settlor, the
        trustee shall continue to hold, administer, and distribute that issue's
        share in a separate trust for that issue according to the terms set
        forth in subsection 5.4 herein below entitled <u>Separate Share Trust
        For Issue Of Then-Deceased Child</u>. In the event that there are no
        then-living issue of Anthony Joseph, then the trustee shall
        distribute said 1/3rd share of the trust property immediately and
        equally between, and pursuant to, subsections 2.4(C)(1) herein
        above & 2.4(C)(3) herein below.

(3)     1/3rd equally among the then-surviving issue of the settlor's
        daughter, Nicole Joseph, by right of representation. However, if
        any of such individual issue have not reached the age of 21 years at
        the death of the settlor, the trustee shall continue to hold,
        administer, and distribute that issue's share in a separate trust for
        that issue according to the terms set forth in subsection 5.4 herein
        below entitled <u>Separate Share Trust For Issue Of Then-Deceased
        Child</u>. In the event that there are no then-living issue of Nicole
        Joseph, then the trustee shall distribute said 1/3rd share of the trust
        property immediately and equally between, and pursuant to,
        subsections 2.4(C)(1)&(2) herein above.

(D)     If the preceding provisions fail to distribute all or any portion of the trust
        estate on the settlor's death, or at any later time of proposed distribution,
        then the failed portion shall be distributed outright and immediate to the
        heirs at law of the settlor, in the proportions provided by the laws of
        succession of the State of California, which heirs are living as of the date
        of distribution."

//

//

//

//

//

3

## SIGNATURE AND EXECUTION

Execution. I certify that I have read the foregoing FIRST AMENDMENT TO THE JOSEPH TRUST Dated April 11, 2005 and that it correctly states the terms and conditions under which the Trust is amended. As Trustee and Settlor of the above-referenced Trust, I approve this Amendment in all particulars, and agree to be bound by its terms and conditions. Executed on October 31, 2016, at Anaheim Hills, California.

SETTLOR-TRUSTEE

Mary M. Joseph

4

Recording Requested by
and when recorded mail
this deed and tax statement to:

MARY M. JOSEPH
23272 Laurel Wood
Lake Forest, CA 92630

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|| ||| ||| ||| ||| ||| ||| ||| ||| ||| ||| ||| ||| ||| 6.00

2005000301912 03:28pm 04/20/05

116 33 D10 1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

---

AP # 613-082-01

Space Above This Line For Recorder's Use

## QUIT CLAIM DEED

The undersigned Grantor(s) declares that the documentary transfer tax is          $ None*
The land tenements or realty is located in:
  / /Unincorporated area                                    / x / City of Lake Forest

**FOR NO CONSIDERATION,** MARY M. JOSEPH, a widow as her sole and separate property,
hereby QUIT CLAIM(S) to MARY M. JOSEPH, Trustee or any other successor Trustee(s) under
that certain Declaration of The JOSEPH TRUST, created by MARY M. JOSEPH, Trustor, dated
April 11, 2005, the following described real property in the City of Lake Forest, Orange
County, California:

Lot 44 of Tract 2342, as per map recorded in Book 63, Pages 6 and 7, of miscellaneous
maps in the County Recorder's office.

And commonly known as:  Address: 23272 Laurel Wood, Lake Forest, CA 92630.
                        Assessor Parcel Number: 613-082-01

### THIS CONVEYANCE TRANSFERS GRANTOR'S INTEREST INTO HIS OR HER REVOCABLE LIVING TRUST, R & T 11911.

### This conveyance is to a living trust, which is not pursuant to a sale.

Dated:  April 11, 2005

MARY M. JOSEPH

State of California     ) SS
County of Orange       )

On April 11, 2005, before me, JEAN L. VAN CAMP, a Notary Public in and for the State of California,
personally appeared MARY M. JOSEPH, personally known to me and proven to me on the basis of
satisfactory evidence to be the person whose name is subscribed to the within instrument and
acknowledged to me that she executed the same in her authorized capacity, and that by her signature
on the instrument the persons, or the entity upon behalf of which the person acted, executed the
instrument.

Jean L. Van Camp, Notary Public



JEAN L. VAN CAMP
COMM. # 1360732
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. JUNE 13, 2006

⑤

Recording Requested by
and when recorded mail
this deed and tax statement to:

MARY M. JOSEPH
23272 Laurel Wood
LAKE FOREST, CA 92630

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 6.00

2005000301910 03:28pm 04/20/05
116 33 D10 1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00



---

AP # 761-162-07

Space Above This Line For Recorder's Use

## QUIT CLAIM DEED

The undersigned Grantor(s) declares that the documentary transfer tax is ___$ None*___
The land tenements or realty is located in:
/ /Unincorporated area                    / x / City of Mission Viejo

**FOR NO CONSIDERATION,** MARY M. JOSEPH, as her sole and separate property, as to her 50% Tenants in Common interest, hereby QUIT CLAIM(S) her 50% Tenants in Common interest to MARY M. JOSEPH, Trustee or any other successor Trustee(s) under that certain Declaration of The JOSEPH TRUST, created by MARY M. JOSEPH, Trustor, dated April 11, 2005, the following described real property in the City of Mission Viejo, Orange County, California:

Lot 16 of Tract 7072, as per map recorded in Book 300, Pages 33 to 35, inclusive, of miscellaneous maps in the County Recorder's office.

And commonly known as: Address: 26832 Magdalena Lane, Mission Viejo, CA 92691.
Assessor Parcel Number: 761-162-07

### THIS CONVEYANCE TRANSFERS GRANTOR'S INTEREST INTO HIS OR HER REVOCABLE LIVING TRUST, R & T 11911.

### This conveyance is to a living trust, which is not pursuant to a sale.

Dated: April 11, 2005



MARY M. JOSEPH

State of California        ) SS
County of Orange          )

On April 11, 2005, before me, JEAN L. VAN CAMP, a Notary Public in and for the State of California, personally appeared MARY M. JOSEPH, personally known to me and proven to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the persons, or the entity upon behalf of which the person acted, executed the instrument.

Jean L. Van Camp, Notary Public

JEAN L. VAN CAMP
COMM. # 1360732
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. JUNE 13, 2006



Recording Requested by
and when recorded mail
this deed and tax statement to:

MARY M. JOSEPH
23272 Laurel Wood
Lake Forest, CA 92630

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

2005000301911 03:28pm 04/20/05
116 33 D10 2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

9.00

AP # 930-56-113

Space Above This Line For Recorder's Use

## QUIT CLAIM DEED

The undersigned Grantor(s) declares that the documentary transfer tax is    $ None*
The land tenements or realty is located in:
    / /Unincorporated area                / x / City of Lake Forest

**FOR NO CONSIDERATION,** MARY M. JOSEPH, a widow as her sole and separate property, hereby QUIT CLAIM(S) to MARY M. JOSEPH, Trustee or any other successor Trustee(s) under that certain Declaration of The JOSEPH TRUST, created by MARY M. JOSEPH, Trustor, dated April 11, 2005, the following described real property in the City of Lake Forest, Orange County, California:

Legal description attached hereto and made part hereof as ATTACHMENT A.

And commonly known as:  Address: 50 Santa Barbara Court, Foothill Ranch, 92610-2403.
                              Assessor Parcel Number: # 930-56-113

### THIS CONVEYANCE TRANSFERS GRANTOR'S INTEREST INTO HIS OR HER REVOCABLE LIVING TRUST, R & T 11911.

### This conveyance is to a living trust, which is not pursuant to a sale.

Dated: April 11, 2005



MARY M. JOSEPH

State of California     ) SS
County of Orange      )

On April 11, 2005, before me, JEAN L. VAN CAMP, a Notary Public in and for the State of California, personally appeared MARY M. JOSEPH, personally known to me and proven to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the persons, or the entity upon behalf of which the person acted, executed the instrument.

Jean L. Van Camp, Notary Public

JEAN L. VAN CAMP
COMM. # 1360732
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. JUNE 13, 2006

⑦

Quit Claim Deed
The JOSEPH Trust
April 11, 2005
Tax Map Number: 1740311027

## ATTACHMENT "A"

Said property is further described as:

ALL AND SINGULAR, ALL THAT CERTAIN PIECE, PARCEL OR LOT OF LAND,
WITH ALL IMPROVEMENTS LOCATED THEREON, LYING, SITUATE AND BEING IN
THE CITY OF MYRTLE BEACH, DOGWOOD NECK TOWNSHIP, HORRY COUNTY,
SOUTH CAROLINA, BEING DESIGNATED AS LOT 25, BLOCK 31, OF THE
HIGHLANDS ADDITION TO THE GOLF COURSE SECTION AS SHOWN ON A MAP
OD SAID PROPERTY BY T.M. JOHNSON C.E., DATED MARCH 15, 1938, AND
RECORDED IN THE OFFICE OF THE CLERK OF COURT FOR HORRY COUNTY, IN
PLAT BOOK 2 AT PAGE 88, REFERENCE TO WHICH IS MADE AS FORMING A
PART OF THESE PRESENTS.

Said property was obtained by Mary M. Joseph by Deed dated June 19, 1997, and
recorded July 10, 1997, In Deed Book 1956, at Page 1054, records of Horry County,
South Carolina.

MARY M. JOSEPH

_____            _____
Witness                             Witness

State of California        ) SS
County of Orange           )

On April 11, 2005, before me, JEAN L. VAN CAMP, a Notary Public in and for the State of California,
personally appeared MARY M. JOSEPH, personally known to me and proven to me on the basis of
satisfactory evidence to be the person whose name is subscribed to the within instrument and
acknowledged to me that she executed the same in her authorized capacity, and that by her signature
on the instrument the persons, or the entity upon behalf of which the person acted, executed the
instrument.

_____
Jean L. Van Camp, Notary Public

JEAN L. VAN CAMP
COMM. # 1360732
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. JUNE 13, 2006

Recording Requested by
and when recorded mail
this deed and tax statement to:

MARY M. JOSEPH
23272 Laurel Wood
LAKE FOREST, CA 92630

Tax Map Number: 174031 1027

Space Above This Line For Recorder's Use

## QUIT CLAIM DEED

The undersigned Grantor(s) declares that the documentary transfer tax is       $ None*
The land tenements or realty is located in:
/ /Unincorporated area                          / x / City of  Myrtle Beach

**FOR NO CONSIDERATION,** MARY M. JOSEPH, as her sole and separate property, hereby
QUIT CLAIM(S) to MARY M. JOSEPH, Trustee or any other successor Trustee(s) under that
certain Declaration of The JOSEPH TRUST, created by MARY M. JOSEPH, Trustor, dated April
11, 2005, the following described real property in the City of Myrtle Beach, Horry County, South
Carolina:

Legal description attached hereto and made part hereof as ATTACHMENT A.

And commonly known as:  402 Highland Boulevard, Myrtle Beach, South Carolina 29577.
                        Tax Map Number:  174031 1027

**THIS CONVEYANCE TRANSFERS GRANTOR'S INTEREST INTO HIS OR HER
REVOCABLE LIVING TRUST, and is exempt under Section 12-24-40 (12)**

**This conveyance from Grantor to Grantee to a living trust, which is not pursuant to a
sale and no consideration was paid.**

Dated:  April 11, 2005

MARY M. JOSEPH

Witness                                          Witness

State of California      ) SS
County of Orange        )

On April 11, 2005, before me, JEAN L. VAN CAMP, a Notary Public in and for the State of California,
personally appeared MARY M. JOSEPH, personally known to me and proven to me on the basis of
satisfactory evidence to be the person whose name is subscribed to the within instrument and
acknowledged to me that she executed the same in her authorized capacity, and that by her signature
on the instrument the persons, or the entity upon behalf of which the person acted, executed the
instrument.

Jean L. Van Camp, Notary Public

JEAN L. VAN CAMP
COMM. # 1360732
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. JUNE 13, 2006

## EXECUTION OF TRUST INSTRUMENT

Trustor and Trustee execute this declaration of trust effective as of the date set forth in
Article 1.

Trustor certifies that Trustor and Trustee have read the foregoing declaration of trust
and that it correctly states the terms and conditions under which the trust estate is to be
held, managed, and disposed of by trustee. Trustor approved the declaration of trust in
all particulars and request trustee to execute it.

TRUSTOR:

_____

MARY M. JOSEPH

April 11, 2005

TRUSTEE:

_____

MARY M. JOSEPH

## ACKNOWLEDGMENT

State of California          )
                             )  ss.
County of Orange             )

On April 11, 2005, before me, JEAN L. VAN CAMP, a Notary Public in and for the State
of California, personally appeared MARY M. JOSEPH, personally known to me and
proven to me on the basis of satisfactory evidence to be the person whose name is
subscribed to the within instrument and acknowledged to me that she executed the
same in her authorized capacity, and that by her signature on the instrument the
persons, or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

_____

JEAN L. VAN CAMP, Notary Public

JEAN L. VAN CAMP
COMM. # 1360732
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. JUNE 13, 2006

⑭



#A.5

*Several months prior to passing*





STATE OF CALIFORNIA
**FRANCHISE TAX BOARD**
PO BOX 942857
SACRAMENTO CA 94257-0511

594700810000

NOTICE DATE:    05/20/16

0000000035898710000305201615++++++++0000000675289

**Notice of Balance Due**

☐  Mark box and write new address on reverse.

N.M.T.INC
23272 LAUREL WOOD ST
LAKE FOREST CA 92630-5328

NOTICE NUMBER:  5114819160514        1
ENTITY ID:  CORP 3589871

TAX YR(S) END: 12/15

BALANCE DUE:$            67.52
PAYMENT DUE DATE:  06/06/16

27

DOB. 10/10/49

10/3/16 ✓

I Mary Joseph ✓ allow for    #A.23

my daughter Nicole Joseph

to pick up my records and CT 9/29/16

scan] from Mission Viejo Hospital

31



CANCER CENTER FOR HEALING

## PATIENT CONSENT TO THE USE AND DISCLOSURE OF HEALTH INFORMATION FOR TREATMENT, PAYMENT, OR HEALTHCARE OPERATION

I understand that as part of my health care, Center for New Medicine and Cancer Center For Healing originates and maintains paper and/or electronic records describing my health history, symptoms, examination and test results, diagnosis, treatment, and any plans for future care or treatment. I understand that this information serves as:

- A basis for planning my care and treatment

- A means of communicating among the many health professionals who contribute to my care

- A course of information for applying my diagnosis and treatment information to my bill

- A means by which a third-party payer can verify that services billed were actually provided

- A tool for routine healthcare operations such as assessing quality and reviewing the competence of healthcare professionals

I understand that I have the following rights and privileges:

- The right to object to the use of my health information for directory purposes

- The right to request restrictions as to how my health information may be used or disclosed to carry out treatment, payment, or health care options

I understand that Center for New Medicine and Cancer Center For Healing is not required to agree to restrictions requested. I understand that I may revoke this consent in writing, except to the extent that the organization has already taken action in reliance thereon. I also understand that by refusing to sign this consent or revoking this consent, this organization may refuse to treat me as permitted in Section 164.506 of the Code of Federal Regulations.

I further understand that Center for New Medicine and Cancer Center For Healing reserves the right to change their notice and practices and prior to implementation, in accordance with Section 164.520 of the Code of Federal Regulations. Should Center for New Medicine and/or Cancer Center For Healing change this notice, they will send a copy of any revised notice to the address I have provided (whether U.S. Mail or, if I agree, email).

I understand that as a part of this organization's treatment, payment, or health care operations, it may become necessary to disclose my protected health information to another entity, and I consent to such disclosure for these permitted uses, including disclosures via fax.

Patient Name: _MARY Joseph_

Date of Birth: _10/18/16_              SS#: _562 - 49 - 6135_

Patient Signature: _[signature]_        Date: _8/16/16_

6 Hughes, Suite 120B, Irvine, CA 92618
(949) 581-HOPE • dana@cancercenterforhealing.com
www.cancercenterforhealing.com • www.centerfornewmedicine.com

32

**Cancer Center for Healing**
6 Hughes, Suite 120B, Irvine, CA  92618
Phone: (949) 581-HOPE

## PATIENT INFORMATION

DATE:

| PATIENT NAME | LAST | FIRST | MIDDLE INITIAL | MARITAL STATUS -CIRCLE ONE |
|---|---|---|---|---|
| | Joseph | Mary | | S  M  D (W) OTHER _____ |

STREET ADDRESS - INCLUDE APT #
23272  Laurel Wood St

HOME PHONE
(949) 770-5453

| CITY | STATE | ZIP | CELL PHONE |
|---|---|---|---|
| Lake Forest | CA | 92630 | (949) 292-9408 |

EMAIL ADDRESS
nmtmjoseph@yahoo.com

[ ] Check here if you **do not** wish to receive news & product emails from CNM & perfectlyhealthy

STUDENT?
Y  N

BUSINESS PHONE
(   )

| SOCIAL SECURITY NUMBER | SEX:  MALE _____  FEMALE ✓ | AGE  66 | DRIVERS LICENSE # |
|---|---|---|---|

| DATE OF BIRTH | PATIENT'S EMPLOYER OR SCHOOL | OCCUPATION |
|---|---|---|
| 10/10/1949 | | Real Estate |

EMPLOYER'S ADDRESS
Self Employed

CITY

STATE    ZIP

| SPOUSE'S NAME  LAST | FIRST | MIDDLE INITIAL | SPOUSE'S DATE OF BIRTH |
|---|---|---|---|

| SPOUSE'S OCCUPATION | SPOUSE'S EMPLOYER | SPOUSE'S BUSINESS PHONE |
|---|---|---|
| N/A | | (   ) |

SPOUSE'S EMPLOYER ADDRESS

CITY

STATE    ZIP

IN CASE OF EMERGENCY,  NAME
CONTACT:  Nicole Joseph

PHONE NUMBER
(704) 591-8985

| STREET ADDRESS | CITY | STATE | ZIP | RELATIONSHIP TO PATIENT |
|---|---|---|---|---|
| 23272  Laurel Wood St | Lake Forest CA | | | daughter |

WHOM MAY WE THANK FOR REFERRING YOU TO OUR OFFICE?
✓ PATIENT _____ DOCTOR _____ OTHER

NAME OF PATIENT OR DOCTOR WHO REFERRED YOU

ADDRESS OF DOCTOR WHO REFERRED YOU

CITY

STATE    ZIP

## INSURANCE INFORMATION

| NAME OF **PRIMARY** INSURANCE COMPANY (WE DO NOT ACCEPT MEDI-CAL/CAL-OPTIMA) | PHONE NUMBER (   ) |
|---|---|

| NAME OF **SECONDARY** INSURANCE COMPANY (MEDICARE PATIENTS ONLY)  Blue cross | PHONE  NUMBER (   ) |
|---|---|

### TREATMENT AUTHORIZATION - ALL PATIENTS

I authorize medical treatment for myself or my dependent, if patient is a minor.

X _____    8/16/16
Patient signature (or parent, if patient is a minor)       Date

### INSURANCE AUTHORIZATION AND ASSIGNMENT - ALL PATIENTS

I hereby authorize the Center for New Medicine, Inc. to furnish information to insurance carriers concerning my illness and treatments, and I hereby assign to the Physician(s) all payments for medical services rendered to myself or my dependents.  I understand that I am responsible for any amount not covered by insurance.  In the event of default for any charges incurred, I agree to pay all costs of collections, including reasonable attorney fees.  I authorize use of this form on all my insurance companies.

X _____    8/16/16
Patient signature (or parent, if patient is a minor)       Date

**\*\*MEDICARE PATIENTS MUST SIGN WAIVER\*\***

(33)

Revised 2/24/2015



### CANCER CENTER FOR HEALING

## BLOOD WORK DISCLOSURE

I, __*Mary Joseph*__ understand that if I am seen by a doctor and have my blood drawn at the same visit, there will be a separate $20 fee for the drawing of my blood that our office does not bill to insurance.

If I come in on a separate visit just for a blood draw, I understand that I will have a co-payment and / or an amount due from my deductible to the Cancer Center for Healing/Center for New Medicine's office for the drawing of my blood.  I also understand that I will receive a bill from the laboratory that is processing my blood work/urinalysis.

I understand that not all labs are contracted with all insurance companies, and we make every effort to verify contracted lab information.  However, since labs and contracts change constantly, you are welcome to:

1. Request a lab slip and call your insurance company for current information, then go to a contracted lab directly for the blood draw/urinalysis.

   *(OR)*

2. Ask that we send your lab work to Westcliff Laboratories.  We have an agreement with Westcliff that they will take the contracted discount for all lab work, regardless of network status, if you call them when you receive your statement and request this service.

_____    __8/16/16__
Patient signature (or parent, if patient is a minor)    Date

_____
Witnessed

6 Hughes, Suite 120B, Irvine, CA 92618
(949) 581-HOPE • dana@cancercenterforhealing.com
www.cancercenterforhealing.com • www.centerfornewmedicine.com

(34)



CANCER CENTER FOR HEALING

## PATIENT CONSENT TO THE USE AND DISCLOSURE OF HEALTH INFORMATION FOR TREATMENT, PAYMENT, OR HEALTHCARE OPERATION

I understand that as part of my health care, Center for New Medicine and Cancer Center For Healing originates and maintains paper and/or electronic records describing my health history, symptoms, examination and test results, diagnosis, treatment, and any plans for future care or treatment. I understand that this information serves as:

- A basis for planning my care and treatment

- A means of communicating among the many health professionals who contribute to my care

- A course of information for applying my diagnosis and treatment information to my bill

- A means by which a third-party payer can verify that services billed were actually provided

- A tool for routine healthcare operations such as assessing quality and reviewing the competence of healthcare professionals

I understand that I have the following rights and privileges:

- The right to object to the use of my health information for directory purposes

- The right to request restrictions as to how my health information may be used or disclosed to carry out treatment, payment, or health care options

I understand that Center for New Medicine and Cancer Center For Healing is not required to agree to restrictions requested. I understand that I may revoke this consent in writing, except to the extent that the organization has already taken action in reliance thereon. I also understand that by refusing to sign this consent or revoking this consent, this organization may refuse to treat me as permitted in Section 164.506 of the Code of Federal Regulations.

I further understand that Center for New Medicine and Cancer Center For Healing reserves the right to change their notice and practices and prior to implementation, in accordance with Section 164.520 of the Code of Federal Regulations. Should Center for New Medicine and/or Cancer Center For Healing change this notice, they will send a copy of any revised notice to the address I have provided (whether U.S. Mail or, if I agree, email).

I understand that as a part of this organization's treatment, payment, or health care operations, it may become necessary to disclose my protected health information to another entity, and I consent to such disclosure for these permitted uses, including disclosures via fax.

Patient Name: _MARY Joseph_

Date of Birth: _10/18/16_          SS#: _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_

Patient Signature: _Mary Joseph_     Date: _8/16/16_

6 Hughes, Suite 120B, Irvine, CA 92618
(949) 581-HOPE • dana@cancercenterforhealing.com
www.cancercenterforhealing.com • www.centerfornewmedicine.com





**CANCER CENTER FOR HEALING**

## PATIENT ACCEPTANCE OF FINANCIAL RESPONSIBILITY

As a patient of Cancer Center For Healing/Center for New Medicine, Inc., you are ultimately responsible for all charges for services rendered. However, after payment is made and as a courtesy, we will provide the necessary information to your medical billing company that will assist you processing your claim for reimbursement from your insurance company for services you received from Cancer Center For Healing/Center for New Medicine, Inc. We cannot guarantee that your insurance will reimburse you for the services rendered. On occasion, your insurance company may send the payment to Cancer Center For Healing/Center for New Medicine, Inc. In the event this occurs, Cancer Center For Healing/Center for New Medicine, Inc. will return the check to the insurance company with instructions to issue the reimbursement check to you.

In addition, your insurance company may require an authorization or pre-certification for certain procedures services, drugs or supplies that will be provided to you. As a courtesy, we will contact your insurance company for authorization for services. However, it is ultimately your responsibility to understand what your insurance policy covers and assure that you have authorization for services. We may request your assistance in following up on our authorization requests. Your assistance in contacting your insurance company will often facilitate a more timely approval of services, prevent delays in treatment, and expedite payment for the services we provide you.

It is common for insurance companies to take longer than expected to reimburse patients for medical services. If you do not receive payment within 60 days of the dates you were seen, contact your medical billing company and request that they follow up with your insurance company. In addition, should your medical billing company contact you for assistance in obtaining payment from your insurance company, your prompt response to their calls will assist you in securing timely reimbursement. They may be reached at 714-258-0011 and are there to assist you in obtaining payment on your claims.

**PLEASE NOTE OUR CANCELLATION POLICY:** Thank you for trusting your medical care to Cancer Center For Healing/Center for New Medicine, Inc. We strive to render excellent medical care to you, your family, and all of our patients. In order to be consistent with this philosophy, Cancer Center For Healing/Center for new Medicine, Inc. uses an appointment system that sets aside ample time for a patient, dependent on the patient's current needs. If you do not show up for your appointment, or notify us of your inability to keep your appointment at least 48 hours in advance, cancel your appointment the same day, the time that has been allotted for your visit cannot be used to treat another patient and is time lost to our office. Missed appointments can also hinder your ability to get well, as each treatment is vital in the overall treatment plan that your practitioner has created.

Our policy is as follows:

1. We request that you please give our office 48-hour notice in the event that you need to reschedule your appointment. This will make the appointment time available to someone else. This means no same-day cancellations.
2. If you miss an appointment and do not contact us with at least 48-hours prior notice or cancel the same say, we will consider that to be a missed appointment and a fee will be assessed to you.
3. If you are late for an appointment you will be seen as soon as possible, though the office visit may need to be shortened in length.
4. As a courtesy, we confirm appointments and provide schedules in advance. If you do not receive your reminder call or message, the cancellation/no show policy still remains in effect.

I have read and understand the Cancer Center For Healing/Center for New Medicine, Inc. Cancellation/No Show Policy and agree to be bound by its terms. I understand and agree that I (or the person named below who is financially responsible for me) am financially liable for all services rendered whether my medical insurance reimburses me for the services or not. I also have I have read and understand the Cancer Center For Healing Cancellation/No Show Policy and agree to be bound by its terms.

_____
Signature of Patient or Guardian

_____
Printed Name of Patient

_____
Date: 8/16/16

6 Hughes, Suite 120B, Irvine, CA 92618
(949) 581-HOPE • dana@cancercenterforhealing.com
www.cancercenterforhealing.com • www.centerfornewmedicine.com



**CANCER CENTER FOR HEALING**

### POLICIES FOR CONTACT WITH OUR OFFICE

The following policies are designed to give you the best experience possible when contacting us between visits. We want our communications with you to be easy and enjoyable. We usually return calls, faxes and e-mails the same day, but please understand it if takes a bit longer.

**Fax: (949) 606-8931**
This is the quickest way to get a response to short medical questions, or to receive prescription refills. If you fax us your question, we will usually be able to respond within the day. However, if the question is too complicated to be answered with a faxed response, our reception will contact you to schedule a phone consult with one of the practitioners.

**Phone: (949) 581-4673**
We answer our phones from 8:30am-12:00pm and 2:00pm-5:00pm Monday through Thursday, and 8:00am-12:00pm on Friday. However, because the doctors are with clients during the day, they may be unable to speak with you directly at the time you call. Our reception staff will do their best to answer quick questions, but more complex ones will require a phone consult with a practitioner. The fee for a phone consultation is $295.00.

**E-mail:** dana@cancercenterforhealing.com
E-mail is answered within 1 working day of receipt, but is best suited for administrative concerns. Because the doctors are very busy during the day, medical questions sent via e-mail may take longer for a response than those sent by fax.

**Contacting Us After Business Hours Or On Weekends**
If you have a true emergency, you must dial 911 as Cancer Center For Healing is an outpatient center with no emergency care facilities or physicians. If you feel that you must reach us outside of normal business hours, please use our answering service. You can reach our answering service by calling our phone number and following the voice prompts. However, if your concern is not urgent, we request that you wait until normal business hours.

Periodically, it becomes necessary for us to leave personal health information such as lab or x-ray test results by telephone after we have been unable to reach you after several attempts. By indicating your permission here, we will leave the information at your current home telephone answering machine or voice mail. Please make sure to keep your phone number updated in our data base records.

☑ I authorize leaving message on my home voice mail or answering machine

☐ I **do not** authorize leaving messages on my home voice mail or answering machine.

If you want the information left at a different location, it will be necessary for you to indicate that very plainly to a member of our office staff.

*I have read, understand and agree to the provisions of this office policy.*

_____     8/16/16
Signature of Patient (or parent if patient is a minor)     Date

_____
Print Name     MARY Joseph

6 Hughes, Suite 120B, Irvine, CA 92618
(949) 581-HOPE • dana@cancercenterforhealing.com
www.cancercenterforhealing.com • www.centerfornewmedicine.com

(36)



## CANCER CENTER FOR HEALING

### PATIENT ACCEPTANCE OF FINANCIAL RESPONSIBILITY

As a patient of Cancer Center For Healing/Center for New Medicine, Inc., you are ultimately responsible for all charges for services rendered. However, after payment is made and as a courtesy, we will provide the necessary information to your medical billing company that will assist you processing your claim for reimbursement from your insurance company for services you received from Cancer Center For Healing/Center for New Medicine, Inc. We cannot guarantee that your insurance will reimburse you for the services rendered. On occasion, your insurance company may send the payment to Cancer Center For Healing/Center for New Medicine, Inc. In the event this occurs, Cancer Center For Healing/Center for New Medicine, Inc. will return the check to the insurance company with instructions to issue the reimbursement check to you.

In addition, your insurance company may require an authorization or pre-certification for certain procedures services, drugs or supplies that will be provided to you. As a courtesy, we will contact your insurance company for authorization for services. However, it is ultimately your responsibility to understand what your insurance policy covers and assure that you have authorization for services. We may request your assistance in following up on our authorization requests. Your assistance in contacting your insurance company will often facilitate a more timely approval of services, prevent delays in treatment, and expedite payment for the services we provide you.

It is common for insurance companies to take longer than expected to reimburse patients for medical services. If you do not receive payment within 60 days of the dates you were seen, contact your medical billing company and request that they follow up with your insurance company. In addition, should your medical billing company contact you for assistance in obtaining payment from your insurance company, your prompt response to their calls will assist you in securing timely reimbursement. They may be reached at 714-258-0011 and are there to assist you in obtaining payment on your claims.

**PLEASE NOTE OUR CANCELLATION POLICY:** Thank you for trusting your medical care to Cancer Center For Healing/Center for New Medicine, Inc. We strive to render excellent medical care to you, your family, and all of our patients. In order to be consistent with this philosophy, Cancer Center For Healing/Center for New Medicine, Inc. uses an appointment system that sets aside ample time for a patient, dependent on the patient's current needs. If you do not show up for your appointment, or notify us of your inability to keep your appointment at least 48 hours in advance, cancel your appointment the same day, the time that has been allotted for your visit cannot be used to treat another patient and is time lost to our office. Missed appointments can also hinder your ability to get well, as each treatment is vital in the overall treatment plan that your practitioner has created.

Our policy is as follows:
1. We request that you please give our office 48-hour notice in the event that you need to reschedule your appointment. This will make the appointment time available to someone else. This means no same-day cancellations.
2. If you miss an appointment and do not contact us with at least 48-hours prior notice or cancel the same say, we will consider that to be a missed appointment and a fee will be assessed to you.
3. If you are late for an appointment you will be seen as soon as possible, though the office visit may need to be shortened in length.
4. As a courtesy, we confirm appointments and provide schedules in advance. If you do not receive your reminder call or message, the cancellation/no show policy still remains in effect.

I have read and understand the Cancer Center For Healing/Center for New Medicine, Inc. Cancellation/No Show Policy and agree to be bound by its terms. I understand and agree that I (or the person named below who is financially responsible for me) am financially liable for all services rendered whether my medical insurance reimburses me for the services or not. I also have I have read and understand the Cancer Center For Healing Cancellation/No Show Policy and agree to be bound by its terms.

Signature of Patient or Guardian

Printed Name of Patient    MARK JOSEPH

Date    8/16/16

6 Hughes, Suite 120B, Irvine, CA 92618
(949) 581-HOPE • dana@cancercenterforhealing.com
www.cancercenterforhealing.com • www.centerfornewmedicine.com



# EXHIBIT "G"

JAMES KAWAHITO (SBN:234851)
KAWAHITO LAW GROUP APC
222 N. Pacific Coast Hwy., Suite 2222
El Segundo, CA 90245
Telephone: (310) 746-5300
Facsimile: (310) 593-2520
Email: jkawahito@kawahitolaw.com

Attorney for Plaintiff Nicole Ida Joseph

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| NICOLE IDA JOSEPH, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL MOSES JOSEPH, an individual; ANTHONY ROBERT JOSEPH, an individual; THE JOSEPH TRUST; and DOES 1-20. <br><br> Defendants. | CASE NO. <br><br> COMPLAINT FOR: <br> • **BREACH OF CONTRACT** <br> • **BREACH OF FIDUCIARY DUTY** <br> • **CONVERSION** <br> • **PROMISSORY ESTOPPEL** <br> • **DECLARATORY RELIEF** <br> • **INJUNCTIVE RELIEF** <br> • **ACCOUNTING** <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Nicole Ida Joseph ("Plaintiff"), for her Complaint against Defendants Michael Moses Joseph ("Michael"), Anthony Robert Joseph ("Anthony"), and the Joseph Trust dated April 11, 2005 ("Joseph Trust"), alleges as follows as to matters within her own knowledge, and on information and belief as to all other matters:

- Plaintiff and defendants Michael and Anthony are siblings and the only natural born children of the late Mary Joseph, who passed away on January 31, 2017.
- On or about April 11, 2005, Mary Joseph created the Joseph Trust. Mary Joseph was named the initial Trustee and Trustor of the trust, and the secondary appointments were identified as Plaintiff, Michael, and Anthony. Mary Joseph was to act as trustee until her death or until such time that she failed to qualify or ceased to act as trustee.
- Upon the death of Mary Joseph, Plaintiff, Michael, and Anthony were to become Co-Trustees of the Joseph Trust, and the trust estate was to be divided equally among them.
- In or around May 2015, Mary Joseph was diagnosed with terminal lung cancer.
- In or around September 2015, a former business associate of Plaintiff filed suit against Plaintiff in Charleston, South Carolina claiming that she had been wrongfully terminated and held an ownership interest in one of Plaintiff's businesses (the "South Carolina Lawsuit").
- While Plaintiff believed that the claims were meritless, she shared the existence of the lawsuit with her mother. Concerned that a lawsuit against Plaintiff could potentially implicate assets of the Joseph Trust and/or the estate given Mary Joseph's deteriorating health, Plaintiff and Mary Joseph decided to consult with an attorney.
- On or around July 16, 2016, Plaintiff and Mary Joseph met with Paul Raber ("Raber"), an attorney licensed to practice law in California.
- During that meeting Raber advised that in order to protect the assets of the Joseph Trust against any potential claims in the South Carolina Lawsuit, he recommended that Mary Joseph remove Plaintiff as a Co-Trustee of the Joseph Trust until such time that the lawsuit was resolved.
- At the end of the meeting, Mary Joseph indicated that she was not comfortable removing Plaintiff as a Co-Trustee, and needed to consider it further.
- During the fall of 2016, Mary Joseph's health declined rapidly.
- Still concerned about the potential implication of the South Carolina Lawsuit on the assets of the Joseph Trust, Mary Joseph scheduled another meeting with Raber. At this time, Mary had discussed with Plaintiff as well as Anthony and Michael her concerns about the South Carolina Lawsuit and Raber's recommendation to temporarily remove Plaintiff as a Co-Trustee. All parties were aware of and knew that Mary Joseph intended that Plaintiff would remain as a beneficiary and re-assume her position as a Co-Trustee upon the resolution of the South Carolina Lawsuit.
- On October 31, 2016 Mary Joseph met with Paul Raber for the second time with the purpose of amending the Joseph Trust documents to temporarily remove Plaintiff as a Co-Trustee. To that end, Raber prepared the First Amendment to the Joseph Trust dated April 11, 2005 ("Trust Amendment"), which Mary Joseph signed. Both Michael and Anthony were aware of the meeting and that Mary Joseph intended to remove Plaintiff as a Co-Trustee only until such time that the South Carolina Lawsuit ended.
- Mary Joseph passed away on January 31, 2017. During the time right before

Michael hired a locksmith to open Mary Joseph's safe and absconded with cash, jewelry, precious gemstones, and financial instruments with a value in excess of $150,000.00.

- Alarmed at her brothers' actions, and fearing that they may take further action as Trustees inconsistent with her 1/3 interest as a beneficiary, Plaintiff spoke with Anthony and Michael. She indicated that in the event the parties were unable to agree upon a written contract that outlined her status as a Co-Trustee and beneficiary of the Joseph Trust, she would take legal action to enforce her rights.
- In order to avoid a lawsuit, and given that all parties recognized that Mary Joseph had never intended to permanently remove Plaintiff as a Co-Trustee, in April 2017, the parties drafted an agreement executed and notarized on April 18 and 19, 2017 (the "Agreement"). At the time the Agreement was entered, Plaintiff was unaware that the Trust Amendment documents purported to remove her as both a Co-Trustee and a beneficiary.
- Per the Agreement, the parties stipulated Plaintiff was removed as a Co-Trustee to the Joseph Trust solely to protect the Trust's assets given the ongoing South Carolina Lawsuit, but that it was Mary Joseph's intent that all three children would share equally as beneficiaries of the Trust and her estate.
- The Agreement further provided that Plaintiff would act as a "silent trustee" and that at no time shall the real properties or other assets be disposed of without the knowledge and authorization of Plaintiff, Michael, and Anthony.
- The Agreement was signed and notarized by Plaintiff, Michael and Anthony.
- Notwithstanding the Agreement, Michael and Anthony have now taken the position that Plaintiff is not in-fact a Co-Trustee of the Joseph Trust or entitled to any assets of the Joseph Trust as a beneficiary. Moreover, they have breached their fiduciary duties to provide Plaintiff with information as to assets of the Trust and to take actions consistent with her status as a beneficiary.
- Moreover, Michael and Anthony have converted the assets of the Trust and Mary Joseph's estate for their own personal benefit.
- Plaintiff is a 1/3 owner of the real properties listed in the Joseph Trust including but not limited to the Properties located at 7676 Aldea Circle, Huntington Beach, CA 92648; 402 Highland Way, Myrtle Beach, SC 29577; 50 Santa Barbara Ct., Foothill Ranch, CA 92610; and 23272 Laurel Wood St. Lake Forest, CA 29577.
- Therefore, as set forth below, Plaintiff seeks injunctive relief ordering that this Court name her as a Co-Trustee to the Joseph Trust and award her damages in excess of $3 million related to the real property and other assets wrongfully taken by Anthony and Michael.

## THE PARTIES

- Plaintiff is an individual who is a resident of Charlotte, North Carolina.
- Defendant Anthony Joseph is an individual who is resident of the County of Orange, State of California.
- Defendant Michael Joseph is an individual who is a resident of the County of Orange, State of California.
- Nominal Defendant the Joseph Family Trust dated April 11, 2005 is a trust created under the laws of California.

herein under the fictitious names DOES 1-20, but prays for leave to amend and serve such fictitiously named Cross-Claim Defendants pursuant to California Code of Civil Procedure § 474, once their names and capacities become known.

- Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or are attributable to Michael, Anthony, and DOES 1-20 (collectively included hereinafter among the "Defendants"), each acting as the agent for the other, with legal authority to act on the other's behalf. Upon information and belief, the acts of the Defendants were in accordance with, and represent the official policies of Defendants.

- At all times herein mentioned, upon information and belief, Defendants, and each of them, ratified each and every act or omission complained of herein. At all times herein mentioned, upon information and belief, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants proximately causing the damages herein alleged.

- Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

## JURISDICTION AND VENUE

- This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a)(1) and (e) because Plaintiff is a resident of North Carolina, Defendants are residents of California, and the matter in controversy exceeds $75,000.00, exclusive of costs. This Court has jurisdiction over all Defendants due to the fact that they are residents of California.

- Venue is proper in this district because Defendants are residents of Orange County, the Agreement was executed in Orange County, and much of the assets and real property at issue are located in Orange County.

## STATEMENT OF RELEVANT FACTS

- **Background Re Joseph Family**

- Plaintiff, Michael, and Anthony are the only children of Mary Joseph, with Plaintiff being the oldest child.

- On or around April 11, 2005, Mary Joseph created the Joseph Trust in which she was the Trustor and initial Trustee. In the event that she passed away or no longer was able to carry out her obligations as the Trustee, at that point Plaintiff, Michael, and Anthony would become Co-Trustees as the second appointment. Similarly, Mary Joseph was the initial beneficiary of the Joseph Trust and Plaintiff, Michael, and Anthony were the only successor beneficiaries.

- At all times prior to her passing, Plaintiff had a very close relationship with her mother Mary Joseph.

- In May 2015 when Mary Joseph was diagnosed with terminal lung cancer, Plaintiff put her life and business on hold in North Carolina where she was living at the time, and regularly commuted back and forth to Orange County to take care of her mother.

- Beginning in May 2016, Plaintiff moved back to California and acted as the primary caregiver for her mother, and spent the majority of her time in